# CASES

## IN THE

# SUPREME JUDICIAL COURT,

### IN THE

### COUNTY OF SOMERSET, JUNE TERM, 1841.

---

### SAMUEL USHER *versus* LUTHER SEVERANCE.

Two articles not simultaneously published in the same paper or book cannot be coupled together for the purpose of ascertaining whether one of them is libellous or not.

In a libel, the charge of larceny being made, malice is by law implied and it is for the defendant to disprove it.

The presumption of malice, arising from the publication of the charge, is not rebutted by proof that the publisher had reason to suspect and believe the truth of the charges made.

In every case it is the province of the jury, under the instruction of the Court, to determine the import of the language used, whether it be libellous or not.

The editor of a newspaper has a right to publish the fact that an individual is arrested, and upon what charge, but he has no right, while the charge is in the course of investigation before the magistrate, to assume that the person accused is guilty, or to hold him out to the world as such.

THIS was an action of trespass on the case for a libel. Plea, the general issue.

The plaintiff read in evidence the article charged as libellous in the Kennebec Journal under date of Nov. 5, 1834, which was as follows: —

### "POST OFFICE REFORM."

"We understand that Samuel Usher, Esq. postmaster of Kingfield in Somerset county, has been arrested for being a little too eager for the spoils of victory. Mr. Stanley, the old postmaster and a very worthy man, was removed since Jackson

VOL. II.                2

came in, to make a place for Mr. Usher, who hurraid for Jackson at a prodigious rate. But Mr. Usher found the proceeds of his office but an insufficient reward for his party services until at last a prize came, a letter with a $500 bill in it from General Crehore of Boston to Daniel Pike, Esq. of Kingfield. The honest and patriotic postmaster, who had perhaps been peeping into letters for some time, discovered the $500 bill and removed the deposit to his own pocket. The missing bill after a while came to the Augusta Bank to be changed and by these means the roguery was traced to the Kingfield postmaster who is now we learn in custody."

The defendant admitted himself to have been the author and publisher of the above article. He then offered in evidence the following article referring to the first, which was published in the same paper of the date of Nov. 19, 1834.

" We are admonished in the Age that we have done great injustice to Samuel Usher, Esq. postmaster of Kingfield, by representing him as guilty of having robbed the mail; that he has been examined before a magistrate and the proof against him was not deemed sufficient to commit him. We did not represent that he had been *proved* guilty, and as he has been discharged on that count, we must deem him to be innocent.

" From the information we had however we supposed there was very little doubt of his guilt. Far be it from us to charge an innocent man with robbing the mail."

The defendant further introduced evidence tending to show that he had reason to believe the truth of what was stated in the first article.

The counsel for the defendant requested the Court to give the following instructions : —

That the article of the 5th of Nov. in connexion with that of the 19th, is not on the face of it libellous.

That if the jury believe that the defendant, when he published the article, had good reason to believe it true and published it from good motives and for justifiable ends, they ought to find for the defendant.

That if the defendant published the article in good faith,

believing the public had an interest in knowing the facts contained in it, the burthen of proving express malice lies on the plaintiff.

These instructions WESTON C. J. who tried the cause, refused to give.

He was further requested, by the counsel for the defendant, to instruct the jury — that if from the evidence they were satisfied, the defendant honestly believed that the conduct of the plaintiff was such as induced the defendant to believe that the plaintiff had been guilty of the charge imputed to him by the defendant, and that the defendant did not publish the article *maliciously*, the jury may well find for the defendant.

The presiding Judge did instruct the jury, if they should find that the article, alleged to be libellous, was published without malice, the action was not maintained, but that the publication itself, the truth not having been set up in justification, was evidence of malice in this case, which was not controverted or removed by the testimony relied upon in defence, as the whole publication was not made lawful by the position occupied by the defendant as the editor of a public newspaper. That as such he had a right to publish the fact that the plaintiff was arrested and upon what charge, but that he had no right, while the charge was in a course of investigation before the magistrate, to assume that the plaintiff was guilty or to hold him out as such to the world.

Upon the last request no other instruction was given.

The jury returned their verdict for the plaintiff : —

If the instructions requested and withheld should have been given, or those which were given, were erroneous, the verdict is to be set aside and a new trial granted ; otherwise judgment is to be rendered thereon.

*Boutelle*, for the defendant. The articles of Nov. 5 and Nov. 19, should be considered as part of the alleged libel. The two articles taken in connexion, the Judge should have told the jury that it was their right and duty to ascertain the meaning of the article, and if they believed it not libellous, to

find for the defendant. *Rex* v. *Lambert,* 2 Camp. 398. The right to publish the fact of the plaintiff's arrest, being admitted, the fairness of the comments made by the defendant, should have been decided upon by the jury. *Cooper* v. *Lawson,* 5 Bing. N. C. 514.

The third request, it is believed, the Judge ought to have complied with. Many well settled cases go to establish the doctrine, that when the words written or spoken are in themselves actionable, yet if spoken or written with confidence of friendship, in the course of church discipline, in the regular course of judicial proceeding, or addressed to executors or other officers entrusted with the power of appointment to or removal from office, *or in the proper discharge of the duties of life,* an action of slander or libel cannot be sustained, because the circumstances repel the presumption of malice, and the burthen of proving malice is thrown on the plaintiff. *Thom* v. *Blanchard,* 5 Johns. 508 ; *Genet* v. *Mitchell,* 7 Johns. 120 ; *Tillotson* v. *Cheetham,* 3 Johns. 264 ; *Jarvis* v. *Hatheway,* 3 Johns. 180 ; *Remington* v. *Congdon,* 2 Pick. 310 ; *Com.* v. *Blanding,* 3 Pick. 304 ; *Bodwell* v. *Osgood,* 3 Pick. 379 ; *Bradley* v. *Heath,* 12 Pick. 163 ; *Barbauld* v. *Hookham,* 5 Esp. 109 ; *Howard* v. *Thompson,* 21 Wend. 319. It is contended that the case at bar comes within the principles established by the above cases. The law considers that the business of life could not be carried on unless men and their affairs were discussed with some freedom, though frequently at the hazard of individual reputation, and therefore it has wisely thrown its shield over communications *honestly* made by one man to another, on subjects in which the latter has an interest ; subject, however, to be punished if the appearance of a lawful purpose is assumed maliciously in order to injure another. If the law thus extend its protection to communications of this kind between man and man, should not its protection be equally extended to communications made through the public press, in which the whole community have an interest ? The defendant had a right, and it was his duty, even with the information he had of the supposed delinquency of the plaintiff, to publish

the fact to the world, that individuals might be on their guard as to sending money through the postoffice kept by the defendant, or that petitions might be preferred to the department for his removal from office. The best interests of society and the ends of justice will be best secured by requiring that in this and in all like cases, the burthen of proving malice and want of probable cause should be thrown on the defendant.

The latter part of the charge of the Court must be considered as nullifying the first part, and as taking away all discretion from the jury to pass on the malice of the defendant, and as asserting, not by way of opinion, but of instruction in matter of law, that if they found the fact of publication, which was admitted, and that inuendoes were true, which was not denied, they should return a verdict for the plaintiff; and this on the ground that the publication was libellous, which the Judge, and not the jury, decided; and that the law inferred malice, which was not rebutted by the position of the defendant as an editor.

In all actions for slander, the jury have a right to pass on the malice of the defendant. In all cases of libel, let the inference of malice from the terms of the publication be ever so cogent, the existence of malice must be found by the jury. 2 Stark. Ev. 741; 2 Kent's Com. 21; Powis v. Smith, 5 B. & A. 850; Pitt v. Donavan, 1 M. & S. 639; Smith v. Spooner, 3 Taunt. 246; Coward v. Wellington, 7 C. & P. 531; Stockdale v. Taste & al. 4 Ad. & Ellis, 248; Hunt v. Algar, 6 C. & P. 245; Dunman v. Bigg, 1 Camp. 269; Delancy v. Jones, 4 Esp. 191; Coffin v. Coffin, 4 Mass. R. 1; Fowler v. Homer, 3 Camp. 294; Rogers v. Clifton, 3 B. & P. 587; Bodwell v. Osgood, 3 Pick. 379; Findler v. Westlake, 22 E. C. L. R. 356. The Judge should have submitted the intent of the publication to the jury; but under the charge given, the jury had no alternative but to disregard the positive instructions of the Court, or to render a verdict for the plaintiff.

The defendant offered evidence tending to show that he believed the truth of what was published in the first article. It was the province of the jury to put their own construction

on the two articles published. If the testimony offered was sufficient to induce a full -conviction in the mind of the defendant of the truth of what he published, ought not this testimony to have been weighed by the jury? and if it entirely rebutted the presumption of malice, should not they have rendered a · verdict for the defendant? 3 Stark. Ev. 1243; 1 Phil. Ev. 106; *Burdell's* case, Vaughan's R. 135. "If the Judge from the evidence shall by his own judgment, first resolve upon any trial what the fact is, so, knowing the fact, shall then resolve what the law is, and order the jury severally to find accordingly, what either necessary or convenient use can be fancied of juries, or to contrive trials by them at all?"

*Tenney,* for the plaintiff. The article of Nov. 5, is most clearly libellous. *Com. v. Clapp,* 4 Mass. R. 168. It is not to be considered in connexion with that of Nov. 19, for they were not published together, and the defendant cannot be permitted to qualify his own wrong. :

The requested instruction, that if the publication was made with good motives and for justifiable ends, they must find for the defendant, was properly withheld: The principle involved · in this request is that the publication of a falsehood is justified by a belief of its truth. But in the publication of any fact, the publisher assumes the risk of the truth of the fact published. He cannot avoid responsibility by saying he was sincere. Starkie on Slander, 181; *King* v. *Root,* 4 Wend. 137,

The object of a civil suit is compensation for an injury sustained. If untrue, what benefit is it to the plaintiff that the defendant believes the truth of what he published; such a defence would be a mere mockery. It might tend to lessen the punishment in a criminal prosecution, but it could have no influence in a civil suit. *Root* v. *King,* 7 Cow. 613; *Brooks* v. *Bemiss,* 8 Johns. 358. Starkie on Slander, 181; *King* v. *Root,* 4 Wend. 113; *Skinner* v. *Powers,* 1 Wend. 451.

The authorities all show that express malice need not be proved. *Andres* v. *Wells,* 7 Johns. 260.

The request that if the jury were satisfied that the defendant honestly believed that the conduct of plaintiff was such

as induced him to believe that he had been guilty, &c., and that the defendant did not publish maliciously, the jury should find for the defendant, is unsupported by legal principles or authorities. This would be to have the benefit of a justification, without its peril. It is asking the jury to infer the absence of malice, not from the truth of the charge, but from an honest mistake under which it may have been made. But the law allows no such mistakes. If libellous matter is published, malice is inferred unless it be true. Carelessness or negligence is no excuse. An editor has no greater privilege than an individual. If he takes the responsibility of publishing what is not true, he cannot avoid it. He cannot assume the prerogatives of a judicial tribunal, and decide upon the character of individuals, and consign them to infamy, and then shield himself from harm by saying that he was an editor and he believed it. His position furnishes no excuse for the publication of falsehood. The jury were bound to find malice.

The opinion of the Court was by

WHITMAN C. J. — This is an action for the publication of a libel upon the plaintiff, in a newspaper edited by the defendant. A verdict was returned for the plaintiff; but with the right, on the part of the defendant, to have it set aside, and a new trial granted, " if the instructions requested and withheld, should have been given ; or those which were given were erroneous."

The first instruction requested and withheld was, " that the article of 5th of Nov. taken in connexion with that of the 19th is not on its face libellous." This instruction, we think the Judge did right in withholding. We know of no authority for coupling two articles, not simultaneously published, and not in the same paper or book, for the purpose of ascertaining whether one of them was libellous or not. In this case a fortnight intervened between the two publications.

The other instructions requested were, that, " if the jury believed, that the defendant, when he published the article, had good reason to believe it true, and published it from good

motives and justifiable ends, they ought to find for the defendant." "That if the defendant published the article in good faith, believing the public had an interest in knowing the facts contained in it, the burthen of proving express malice lies on the plaintiff;" and, "that, if from the evidence, they were satisfied, that the defendant honestly believed, that the conduct of the plaintiff was such, as induced the defendant to believe the plaintiff had been guilty of the charge imputed to him by the defendant, and that the defendant did not publish the article maliciously, the jury may well find for the defendant."

The counsel for the defendant, Mr. Boutelle, has cited numerous authorities, and his argument has been elaborate and ingenious in support of these propositions. But the authorities, upon examination, will be found to apply to a class of cases very different from the one at bar. They are cases arising from communications to a body having power to redress a grievance complained of; or having cognizance of the subject matter of the communication, to some intent or purpose or other; and to cases of communications made confidentially, or upon request, where the party requesting information had an interest in knowing the character of the individual inquired after; and to cases where a party might be honestly endeavoring to vindicate his own interest; as in the case of the slander of title; or of guarding against any transaction, which might operate to his own injury; and to cases of words not in themselves actionable, except from the special injury which they might occasion.

The case at bar is one of a publication addressed to no person or body of men having power to redress a grievance; and, it is rather superfluous to add, not a confidential communication to any one; and does not appear to have been designed to guard against any injury imminently threatening the individual interest of the publisher; nor does it present a case of words in themselves not actionable.

The allegation in the plaintiff's writ is, that the publication accuses him of the crime of larceny. This allegation being proved, malice is by law implied, and it would be for the de-

fendant to disprove it. The burthen of proof in such cases is thrown upon him.

But it is incumbent on the plaintiff first to prove, his allegation, that the defendant has, by his publication, accused him of the crime. The terms of the article may, to this purpose, be explicit and unequivocal ; or they may be obscure and unintelligible, in the absence of extraneous proof to show their meaning ; as in the case of the use of words, which are mere provincialisms or cant phrases, or terms of art, or where words are used qualifying or restraining the meaning of other words used. In every case it is believed to be the province of the jury, under the instruction of the Court, to determine the import of the language used. 1 Carr & Paine, 245.

The instruction of the Court is nothing more than the term imports. It is not mandatory but advisory. The instruction requested of the Court, we cannot, therefore, on the whole, regard otherwise than as properly withheld.

The argument of the counsel for the defendant seems to concede, that the presumption of malice in this case, if the matter of the publication may be regarded as malicious, is inferable from publication ; and in the absence of all evidence to the contrary, the Court would be justified in advising the jury, that malice was to be inferred ; but the evidence to do away with such a presumption, as has already been seen, must be different from that relied upon in the defence. There was, then, no evidence in the case, which should have had that effect ; and the charge of the Judge to the jury would not seem to have been, substantially, at variance with the position admitted, by the counsel for the defendant, to have been correct.

*Judgment on the verdict.*