WHITE vs. THE GOODRICH TRANSPORTATION COMPANY.

PRESUMPTIONS ON APPEAL. *(1, 2) Presumption as to evidence, to support judgment.*
CONTRACT: COMMON CARRIER. *(3) When common carrier's liability begins. (4) Ratification by shipper of consignee's special contract with carrier.*

1. Where the bill of exceptions is not stated to contain all the evidence bearing upon specific questions of fact submitted by the court to the jury, it must be presumed that there was evidence to support the findings of the jury upon the questions.
2. In such case, also, it must be presumed, in the absence of proof to the contrary, that the evidence was such as to support the instructions, so far as they rest upon assumptions of fact.
3. The liability of a common carrier, as such, attaches to goods received by it for carriage from the time of such reception, and while they remain in its warehouse before the actual carriage begins.

4. One who ships his own goods consigned to a person who has a special contract with the carrier for the carriage of goods at reduced rates at the owner's risk, and afterwards accounts with his consignee for the freight charges paid by the latter on the goods at the reduced rates, will not be held to have ratified the contract as one for the carriage of such goods *at his risk*, unless it appears that he *had notice of such contract.*

APPEAL from the County Court of *Milwaukee* County. The complaint alleges that defendant is a common carrier by water on Lake Michigan, and plaintiff is a maker in and manufacturer of galvanized iron building trimmings; that on or about the 20th of September, 1873, plaintiff delivered to defendant certain cornices and brackets for a building, to be delivered, and defendant promised and undertook to deliver the same, at Escanaba, in the state of Michigan, and plaintiff agreed to pay on such delivery, for the carriage thereof; that defendant, neglecting his duty as such common carrier, failed to deliver, and has not delivered, a part of said iron work, and other portions of the same were broken and injured, to plaintiff's damage in the sum of $114.65, as appears by a bill of particulars on file herein; for which sum, with costs, the plaintiff demands judgment. Answer, a general denial.

It appeared on the trial, that when the alleged cause of action arose, one Sustin had contracted to erect a building for one Adler, at Escanaba, Michigan. Sustin and the plaintiff entered into a contract, by which the plaintiff agreed to furnish and put up the cornice to such building, according to certain specifications, at a stipulated price. The plaintiff delivered the cornice, and brackets to support it, to the defendant at Milwaukee, to be shipped to Escanaba. The defendant is a common carrier. It is claimed that the cornice and a part of the brackets arrived at Escanaba in a damaged condition, and that the remainder of the brackets were broken in the defendant's warehouse in Milwaukee, and were shipped later to Escanaba. The cornice and brackets were repaired by the

plaintiff, and put upon the building pursuant to his contract with Sustin.

It also appeared that Adler had a special contract with the defendant for the shipment of building material from Milwaukee to Escanaba, at reduced rates and at his own risk. The cornice and brackets were consigned to Adler, and the letters " O. R. & B.," denoting that the goods were shipped at the owner's risk, were written on the face of the shipping bill. It does not appear that the plaintiff ever saw the shipping bill, or that he made any contract with the defendant limiting the liability of the latter for the safe carriage of the goods. The evidence preserved in the bill of exceptions tends to show that Adler paid the freight at the reduced rates of his contract, and that the plaintiff afterwards accounted to him therefor.

The defendant delivered all goods carried by it to Escanaba, on the dock or into the warehouse of the Chicago & Northwestern Railway Co. at that place, and the latter company delivered the goods to the consignees and collected the freight thereon for the defendant. Sustin received the cornice and the brackets first shipped at Escanaba. He testified that he received them directly from the defendant's boat, and that they were then injured; but this is controverted.

The plaintiff recovered, and the defendant appealed from the judgment.

The appeal was submitted for the appellant on the brief of *Murphey & Goodwin*.

For the respondent, there was a brief by *Flanders & Bottum*, and oral argument by *Mr. Flanders*.

LYON, J. The principal controversy in this case is upon the question, whether the cornice and brackets were shipped under Adler's contract with the defendant, in which case they were at the owner's risk of damage, or whether they were shipped by the plaintiff without reference to that contract. There is no

claim that the plaintiff made any special contract with the defendant, by which the common-law liability of the defendant as a carrier was restricted. Hence, if the articles were not shipped under the Adler contract, the defendant is liable for a failure to deliver them in proper condition at Escanaba.

The learned county judge instructed the jury, that it was competent for the defendant, by special contract with the shipper, to relieve itself from liability for injuries to the property in transit, unless caused by its own negligence, and fully and fairly submitted to the jury the question whether or not the shipment was made under the Adler contract. The jury must have found that the shipment was not so made, and the verdict is conclusive on that subject. The bill of exceptions is not certified to contain all of the testimony, and it must be presumed that there was sufficient evidence to support the findings of the jury upon all questions of fact submitted to them by the court.

2. The jury were instructed, that if the goods were injured when in the possession of the C. & N. W. R'y Co., on its dock at Escanaba, that company being the agent of the defendant to deliver goods shipped to that place, and collect freights thereon, the defendant would not thereby be relieved from liability for such injury. For the reason above stated, it must be assumed that the proofs support the instruction. This disposes of an instruction of an opposite character, proposed on behalf of the defendant, which the court refused to give.

3. As to the brackets which were broken in the defendant's warehouse in Milwaukee, there can be no doubt that they were in the possession of the defendant as a carrier, and not merely as a warehouseman; and so the court instructed the jury. Angell on Carriers, p. 122, § 129.

4. The following instructions, proposed on behalf of the defendant, the court refused to give:

"If you find from the testimony, that the regular freight on the goods in controversy from Milwaukee to Escanaba was

$1.70 per hundred, and that, when shipped at owner's risk, they were shipped at 20 cents per hundred, and plaintiff received the goods and paid the 20 cents freight, he must be bound by the condition of owner's risk.

"If you find that Mr. Adler, the owner of the building, made the contract of shipment at 20 cents, owner's risk, and afterwards plaintiff ratified this contract by allowing the rate, he is responsible."

These propositions are fatally defective in that they ignore the question whether the plaintiff had notice of the Adler contract. He can scarcely be charged with the ratification of a contract to which he was not a party, and of the existence of which he may have been entirely ignorant.

It is believed that the above observations dispose of all the material questions in the case. We fail to find any error disclosed by the record, which will justify a reversal of the judgment.

*By the Court.* — Judgment affirmed.

RYAN, C. J., took no part.