## JOHNSTON *v.* OREGON SHORT LINE RY. CO.

[S. C. 31 Pac. Rep. 283.]

1. **BILL OF EXCEPTIONS—PRACTICE.**—A bill of exceptions which is merely a transcript of the stenographer's notes will not be stricken out, although it contains much immaterial matter, when it was allowed as a bill of exceptions without objection, and the error, if any, to be reviewed, is the granting of a nonsuit. *Eaton* v. *O. R. & N. Co.* 22 Or. 497 (30 Pac. Rep. 311), distinguished.

2. **PLEADING CONTRIBUTORY NEGLIGENCE AS A DEFENSE.**—Contributory negligence is a defense and must be so pleaded. It is not necessary for the plaintiff to allege that he was free from negligence. *Kahn* v. *Love,* 3 Or. 206; *Welch* v. *O. R. & N. Co.*, 10 Or. 253, and *Coughtry* v. *Ry. Co.*, 21 Or. 245

(27 Pac. Rep. 1031) criticised; *Grant* v. *Baker*, 12 Or. 329 (7 Pac. Rep. 318), approved.

3. RES GESTÆ — EVIDENCE.— A statement made by an injured party immediately after the accident is no part of the *res gestæ* and should not be received in evidence. *Sullivan* v. *O. R. & N. Co.* 12 Or. 392 (5 Pac. Rep. 508) followed.

4. EVIDENC.— A witness cannot be allowed to state whether it was proper for a railroad switchman to ride upon the ladder of a freight car—it was the province of the jury to decide that on the evidence.

5. MASTER AND SERVANT— RISK OF EMPLOYMENT— ORDINARY AND EXTRAORDINARY HAZARDS.— A servant assumes the ordinary hazards of an employment, but he has a right to assume that the master will furnish him a safe place to work, and that the instrumentalities of the business are and will be kept in good repair. Under his contract of employment, a servant does not assume risks that are extraordinary or not incident to the employment, and as to such dangers it is the master's duty to point them out and warn the servant of their dangerous nature.

6. IDEM — DANGEROUS OBSTRUCTION.— A railway brakeman has a right to assume that no obstruction will be placed dangerously near the track, and in the absence of notice he may recover if injured thereby.

7. INJURY TO EMPLOYE— OPEN AND VISIBEE RISK.— In addition to the ordinary hazards of an employment, a servant assumes such other risks as are open and visible. He must remember his surroundings and conduct himself with caution. *Stone* v *Or. City Mfg. Co.* 4 Or. 55; *Hurst* v. *Burnside*, 12 Or. 520 (8 Pac. Rep. 888), approved.

8. MASTER AND SERVANT— OPEN AND VISIBLE RISK DEFINED.— An open and visible risk which is assumed by a servant is one so patent that a person familiar with the business will instantly recognize it, and about which there can be no difference of opinion between intelligent persons accustomed to the service.

9. MASTER AND SERVANT— CONTRIBUTORY NEGLIGENCE.— A railroad switchman who has worked in a yard but two weeks is not as matter of law guilty of contributory negligence in riding upon the ladder on the side of a car past a switchpole but twenty inches from the wall of the car and four feet from the track.

Multnomah County : E. D. SHATTUCK, Judge.

Action by Wm. B. Johnston, administrator of the estate of David H. Cope, against the Oregon Short Line & Utah Northern Railway Co. for damages for negligently killing said Cope. Judgment of non-suit, and plaintiff appeals. Reversed.

*Thos. O'Day*, for Appellant.

*W. W. Cotton*, and *Zera Snow*, for Respondent.

MOORE, J.—The appellant commenced an action in
the circuit court for Multnomah County against the
respondent to recover damages for wrongfully causing
the death of David H. Cope.   The appellant alleged in
his complaint, in substance, that he was the administrator
of the estate of David H. Cope, and that the respondent
was a corporation duly incorporated and engaged in ope-
rating a railroad in this state ; that on the ninth day of
December, 1890, David H. Cope was an employé of the
defendant for hire as switchman in its yard at The Dalles,
in this state, and while so engaged was injured by being
struck by a target-pole on defendant's road in the said
yard and thrown under the wheels of one of defendant's
cars, whereby his legs were crushed, from which injury
he died on the tenth day of December, 1890 ; that defend-
ant had negligently caused to be erected and had main-
tained in its yard at The Dalles a switch to be used in
switching engines and cars ; that part of said switch con-
sisted of a securely fastened perpendicular shaft, some
six feet high, generally called a switch target-pole, which
was carelessly erected and maintained in such close prox-
imity to its track as to needlessly hazard the life of said
David H. Cope and other employés engaged in switching,
and that the dangerous and hazardous condition of said
switch was well known to defendant ; that at the time of
the injury said Cope was in the due performance of his
duties ; and defendant, regardless of its duties, failed to
furnish said Cope and other employés engaged in switch-
ing cars at the time such injury occurred with the usual
and ordinary switch engine in use in said switch yard at
The Dalles, but caused and directed said Cope and other
employés to use an ordinary road engine for such switch-
ing ; that in switching it was necessary for said Cope as
switchman to ride on the cars or engine from one portion
of the yard to another ; that the switch engine in ordinary
use at said yard is provided with footboards, handrails
and handstakes on the front and rear of the engine, so
that the switchmen may ride thereon in safety, but that

said road engine had no such footboards, handrails or handstakes, and that in order to do his duty as such switchman, he had to ride on one of the cars which at the time was being switched; that at the time of the injury, without any negligence or fault on the part of said Cope, he was struck by said switch target-pole while passing the same, and received the injury complained of; that the defendant failed to provide the switches in said yard with switchlights; that the switch where the said Cope was injured was erected much nearer the track than is usual for like switches to be placed; that the usual switch engine is provided with both head and rear lights, but that said road engine then being used had no light on the rear while switching, and that the absence of said light directly contributed to the injury of said Cope, as said engine was then backing up, pulling the cars which were being switched, and that the switch target-pole could not be seen by said Cope so as to avoid the injury; that by reason of the negligence of defendant, and without any negligence, and without the breach of any of the conditions of his employment, and while in the due performance of his duty, said Cope was injured by defendant and his death caused thereby, to the damage of his estate.

A demurrer was interposed to this complaint on the ground that the same did not contain facts sufficient to constitute a cause of action, which the circuit court sustained, and plaintiff was given leave to amend, which he did by alleging, in addition to the original complaint, that said Cope was employed for hire, being a "night" switchman, and also adding, "but said Cope had only been employed in said yard a few days, and his work was in the night-time and the dangerous condition of said switch and yard was unknown to him." An answer and reply were filed, the issues completed, and appellant submitted his testimony, whereupon the respondent moved the court for a nonsuit, which was granted, from which judgment this appeal is taken, and the following are assigned as errors: *First,* the court erred in sustaining the demurrer

to appellant's original complaint and requiring him to amend and allege that deceased had no knowledge of the dangerous condition of the switch, as knowledge of the condition of any unusually dangerous or hazardous machinery or appliance is a matter of defense; *second*, the court erred in refusing to allow the witness, Holland, to answer the two questions put to him, viz., "What Cope said as to his injury when he went to him to pick him up at the switch where he was injured," and "whether or not it was proper for him to ride on the ladder of the car, where he was riding at the time of the injury"; *third*, the court erred in sustaining defendant's motion for a nonsuit and refusing to submit the evidence to the jury, for the reasons, that (1) whether the switch in question was maintained too near the track, and (2) whether deceased assumed the risk as one of the ordinary risks of his employment, were questions of fact for the jury, and not questions of law to be determined by the court.

1.    The appellant prepared and filed a bill of exceptions which is simply a transcript of a stenographer's notes taken at the trial of the cause.    This bill of exceptions contains the objections of counsel for both parties, the rulings of the court on such objections, and the exceptions taken, and respondent files a motion to strike the bill of exceptions from the record, relying upon the decision of this court in *Eaton* v. *O. R. & N. Co.* 22 Or. 497 (30 Pac. Rep. 311).    In that case objection to the form of the bill of exceptions was taken in the court below and protest there made by plaintiff's counsel.    In this case the order admitting and allowing the bill of exceptions says that the same was presented to counsel for defendant, and by consent it was allowed as a bill of exceptions. There is much immaterial matter contained in this bill of exceptions ; but as the question is raised that the court erred in sustaining the motion for a nonsuit, this necessitates an examination of more testimony than almost any other question that could be presented.    It is a general rule that unless the bill of exceptions contains all

the evidence, it will be presumed there was sufficient to support the verdict: *White* v. *Goodrich Trans. Co.* 46 Wis. 493 (1 N. W. Rep. 59). For these reasons, the motion to strike the bill of exceptions from the record must be denied.

2. Mr. Wood, in his work on Railway Law, § 386, thus states the facts which must be established by the servant in order to recover for injuries received from defective appliances and machinery: "The servant, in order to recover for defects in the appliances of the business, is called upon to establish three propositions — *first,* that the appliance was defective; *second,* that the master had knowledge or notice thereof, or ought to have had, and, *third,* that the servant did not know of the defect, and had not an equal means of knowing with the master." Is it necessary for the plaintiff to allege the third ground as laid down by Mr. Wood? In *Kahn* v. *Love,* 3 Or. 206, this court held that "the plaintiff in an action for damages occasioned by defendant's negligence, must so frame his complaint as not to leave an inference that he was guilty of negligence that contributed to his injury." In *Welch* v. *O. R. & N. Co.* 10 Or. 253, this court says: "He must prove that the accident was caused by the wrongful act, omission, or neglect of the defendant, and that the injury of which he complains was not the result of his own negligence and the want of ordinary care and caution." We think the latter clause of the above quotation was certainly a *lapsus linguæ,* and all that was intended thereby was that the plaintiff must be prepared to meet this issue when presented as a defense. A careful examination of the whole opinion in that case clearly shows that the court did not intend to lay down such a rule. In *Grant* v. *Baker,* 12 Or. 329 (7 Pac. Rep. 318), this court explained the foregoing by comparing it with the whole opinion, and shows that it was not intended by the court at that time to enunciate a general rule, but to apply the facts to that particular case. THAYER, J., speaking for the court, laid down the rule as follows: "I think it has always

been understood by this court that contributory negligence is a defense, and must be averred as such," and "where the injury results from the direct act or omission of the defendant, which *prima facie* is negligence in itself, and the plaintiff receives an injury in consequence thereof while pursuing his ordinary course of affairs, he will not be compelled, in order to recover his damages, to prove that he was free from fault." In *Coughtry* v. *W. B. Ry. Co.* 21 Or. 245 (27 Pac. Rep. 1031), STRAHAN, C. J., says: "The gist of this action is negligence; and in order to enable the plaintiff to recover, he must prove by a preponderance of the evidence that the defendant violated some duty which it owed the plaintiff; that is, that it did some act without due care which it ought not to have done, or that it omitted to do some act which it ought to have performed, and that such act or omission contributed to the injury of which plaintiff complains; and in addition to this, that the plaintiff was guilty of no act which contributed to the injury." We think the latter clause must have been an oversight, unintentionally written, as the only questions presented by the record were "that defendant had not been guilty of any negligence, and that plaintiff's evidence showed that he was guilty of negligence contributing to the injury," and for these reasons alone the case was reversed. No question was raised in the case upon the pleadings, and we do not think the court intended to lay down any general rule on the subject.

We think the correct rule is laid down by THAYER, J., in *Grant* v. *Baker*, *supra*, and that in order to recover for personal injury it is not necessary to allege that the plaintiff has been free from negligence, or to deny that any act of his contributed to the injury sustained; that contributory negligence is a defense which must be pleaded; and that while the burden of proof is on the plaintiff to show that the appliance was defective, and that the master had knowledge or notice thereof, or ought to have had, that the burden of proof is on the defendant to show that the servant did know the defect

and that his negligence has contributed to the injury. In the seeming conflict of authority, it is no wonder the learned judge who tried this case in the court below relied upon the *dictum* in *Coughtry* v. *W. B. Ry. Co. supra*, and in the hurry of the trial sustained the demurrer to the complaint. We think there was error in so doing. We do not intend to depart from the rule announced in *Huffman* v. *McDaniel*, 1 Or. 259, and *Wells* v. *Applegate*, 12 Or. 208, that a demurrer is abandoned when the party filing it pleads over; but we have in this case apparently done so in order to correct the error caused by the Welch and Coughtry cases.

3.    We fail to see any error committed by the court in excluding any statement the deceased may have made at the time of the injury as to the cause thereof: *Sullivan* v. *O. R. & N. Co.* 12 Or. 392 (5 Pac. Rep. 508).

4.    It is not apparent either that there was any error in excluding the testimony in relation to whether or not it was proper for Cope to ride on the ladder of the car. This called for an opinion from the witness. It was the province of the jury to say, after hearing all the evidence, whether it was proper for him to ride there.

Did the court commit error in sustaining defendant's motion for a nonsuit and rendering judgment against appellant? The record shows that plaintiff rested his case, whereupon defendant moved the court for a nonsuit on the ground that no negligence on the part of the company had been shown, and also on the ground that contributory negligence had been shown on the part of the plaintiff. In other words, that there was not sufficient evidence to go to the jury upon the matters and things alleged in the complaint. During the pendency of the argument on the motion, counsel for plaintiff asked permission to show how high the car step on which Cope was standing at the time of the alleged injury was from the ground; the usual mode of riding under the circumstances; the usual width of cars, and how tall Cope was in the position he was in,— to which the defendant ob-

jected on the ground that it was too late. The court overruled the objection and allowed plaintiff to offer upon these points evidence to be considered on the motion. We shall therefore examine this evidence in connection with the other.

The evidence offered tended to show that the yard of the respondent at The Dalles, with reference to its tracks and the condition thereof at the time of the injury, was as follows: That the main track ran nearly due east and west; that just east of the depot there was a sidetrack connected with the main track and known as the house track; that north of the main track there was track number one connected with track number two, and north of these was the team track; that at a point farther west than the switch connecting tracks number one and two, there was a switch connecting the main track, track number two, and the team track; that about four feet west of the switch connecting track number one and two is a road crossing; that it is claimed Cope was injured at this switch near this road crossing; that the switch target-pole, which it is claimed caused the injury, stands between the main track and the point of junction of tracks num ber one and two, and just four feet from the south of track number one; that this switch target-pole was about one and one-half inches in diameter at the bottom and about one inch at the top, six feet high, and made of iron; that on track number one north of the depot two boxcars were standing, the one at the west being a furniture car and measuring nine feet eleven and one-half inches across the platform at the end, which platform extended beyond the side of the car about one and one-half inches; that this car had an iron step or stirrup, extending to within about twenty inches from the ties at the southwest corner of the said car as it then stood; that this car had no side ladder but had one at the end. There is some conflict of testimony in relation to the handhold, — one witness stating that it was on the end of the car, and another, who saw Cope when he took hold of this handhold as the train

started, says it was on the side of the car. The boxcar coupled at the east end to this furniture car was eight feet and eight inches wide; that on the evening of the injury, the engineer in charge of the engine then doing the switching had orders to take these two cars from track number one and run them in on the house track. At that time the engine was headed east and standing on the main track. The engineer backed his engine west on the main track to the main switch, then ran ahead east on track number two to the switch connecting with track number one, and then east on track number one to these boxcars, and Cope coupled the head of the engine to the west end of the furniture car. He then placed one foot in the stirrup at the southwest corner of this car and next the engine, and held to the handhold of the car. This was about eight o'clock in the evening; it was dark and Cope had a lantern. The headlight of the engine cast its rays against the end of the car upon which Cope was standing. There was no light on the switch target-pole and none at the rear of the engine. The engine then commenced to back west on track number one, draw-ing these two cars after it. When it passed the switch target-pole, it was observed that Cope's light was miss-ing, and soon thereafter he was picked up at the road crossing about four feet from the switch, having received the injury; that the distance between the wall of the fur-niture car and the switch target-pole at this point, by computation, did not exceed nineteen and three fourths inches; that Cope was a man between twenty and twenty-one years old, bright, active, and intelligent, and had had about two years' experience as brakeman on rail-roads in Pennsylvania, and as such brakeman was ac-customed to coupling and switching cars, and that he he was about five feet six or seven inches tall; that he had worked as an extraman in this yard about two weeks, part of the time at day and the other at night work, and on the night before the injury occurred had commenced on steady employment as a night switchman;

that the regular switch engine, commonly used in the yard, was out of repair, and a common road engine was then being used in its place, and that this engine had no footboards on which switchmen could ride; that the common distance of a switch target-pole from the track is about six feet; that on the day before the injury complained of occurred, another employé was brushed by this target while passing, and the defendant was notified of its dangerous condition; that no evidence was offered to show that Cope had been warned of the danger; that it is usual and customary for switchmen to ride from one part of the yard to another standing on the stirrup of a freight car while switching. We have stated the sub stance of this testimony with reference to the yard, switch-target, car, and engine, to show the relative positions and apparent danger.

5.  "When a servant enters into the employ of another, he assumes all the risks ordinarily incident to the business.    He is presumed to have contracted with reference to all the hazards and risks ordinarily incident to the employment, consequently he cannot recover for injuries resulting therefrom": Wood Mast. & Ser. 672.    There are risks and dangers incident to most employments.    It is particularly so in the management of engines and trains.    There are risks and dangers ordinarily incident to every branch of such service.    These risks parties have in view when engagements for service are made, and in consideration for which the rate of compensation is fixed.    The servant has these ordinary risks and dangers in view when he enters the employ of the master. He has the right, however, to assume that the master will furnish him a safe and convenient place in which to perform the service, and that the instrumentalities of the business are in good repair.    He has the right to assume that the master has furnished these; but risks and hazards that are extraordinary and not incident to his business, he does not assume under his contract of employment.    As to risks and hazards that are extraordinary, and not the

usual risks and dangers incident to his employment, it is the duty of the master to point them out, to call his attention particularly to them, and to warn him of their danger.

6. The servant has the right to assume that no obstruction will be placed dangerously near the track of a railroad; and if the master would avoid the consequence of an injury from such obstruction, he must show that he has duly warned the servant thereof; and such servant by continuing in the employment thereby assents thereto and takes the risks and dangers consequent upon such extra hazard.

7. The servant also takes upon himself, in addition to the ordinary risks incident to the business, such other risks as are open and visible; and if he knows of such defects and is conscious of such extra hazards, the fact that he for a moment forgets their existence and thereby sustains an injury, will not make the master liable: *Stone* v. *Oregon City Mfg. Co.* 4 Or. 55; *Hurst* v. *Burnside,* 12 Or. 520 (8 Pac. Rep. 888).

8. An open, visible risk is such an one as would in an instant appeal to the senses of an intelligent person : Wood Mas. & Ser. 763. It is one so patent that it would be instantly recognized by a person familiar with the business. It is a risk about which there can be no difference of opinion in the minds of intelligent persons accustomed to the service. It is not expected that the servant will make close scrutiny into all the details of the instrumentalities with which he deals. His employment forbids that he should thus spend his time. If the rule were otherwise, the management of a great railway system would be needlessly slow. The servant is expected to observe such objects only, in the absence of notice, as would in an instant convince him of their danger. It is not expected of a switchman that he should carefully measure the distance between a switch-target and the rail. This is the duty of the master ; and the servant has the right to assume that the target or other obstruction is at a reasonably safe distance, in the absence of

anything to excite special apprehension of danger: *Whalen* v. *R. R. Co.* 16 Ill. App. 323; and if he knew that the target was but four feet from the track, he might then not be aware of the imminent danger. "One may know the facts and yet not understand the risk": *Roth* v. *N. P. Lumber Co.* 18 Or. 213 (22 Pac. Rep. 842).

9. Deceased had been employed in this yard about two weeks; his labors must necessarily have engrossed his attention, and while he must have known of the existence and location of this switch-target, he may not have known from observation, or unless his attention had in some way been specially called to it, that it was near enough to the cars to be dangerous: *Johnson* v. *Ry. Co.* 43 Minn. 53 (44 N. W. Rep. 884). Notwithstanding the dangerous character of his business required the exercise of due care in the discharge of his duties, and considering the fact that he had worked in the yard for two weeks, we do not think that, as a matter of law, his act was conclusive of contributory negligence so as to take the consideration of the question from the jury. "Where the fact of the negligence is doubtful, it should be submitted to the jury": Wood Mas. & Ser. 754. Assuming the evidence to be true, together with all the inferences to be drawn therefrom, as we necessarily must do, we think the question should have been submitted to the jury in connection with all the circumstances under proper instructions from the court. The judgment must therefore be reversed and the nonsuit set aside.