Decided at PENDLETON, July 18, 1896.

## THOMAS *v.* BOWEN.
[45 Pac. 768.]

1. SUFFICIENCY OF NOTICE OF APPEAL—COSTS.—It is not necessary that the notice of appeal from a judgment should state the amount of costs and disbursements.

2. BILL OF EXCEPTIONS—CONCLUSIVENESS OF JUDGE'S CERTIFICATE.—The certificate of the trial judge appended to the bill of exceptions conclusive on the appellate court, in the absence of some direct motion or other step to correct it.

3. WHAT CONSTITUTES LIBEL.—A publication charging plaintiff with having been arrested for larceny, commenting upon her kleptomaniac tendences, and stating that stolen property was found in her apartments, is libelous *per se*, unless privileged, for it will probably cause plaintiff pecuniary loss, will injure her association with the community where she lives, and expose her to public contempt.

4. LIBEL—PRESUMPTION OF MALICE—BURDEN OF PROOF.—When a publication is libelous *per se*, the falsity thereof and defendant's malice will be presumed, though both are alleged, where plaintiff does not base her right of action on such allegations.

From Baker: ROBERT EAKIN, Judge.

This is an action to recover damages for the publication of an alleged libel. The plaintiff alleges, in substance, that the defendants are the owners and publishers of the Morning Democrat, a daily newspaper published at Baker City; that they, on October fifth, eighteen hundred and ninety-five, wrongfully published in said newspaper the follow-

ing words concerning the plaintiff, to wit: "Charged with Larceny—Mrs. Flora Thomas, colored, in the toils. The arrest of Mrs. Flora Thomas, a colored domestic in the employ of Fannie Hall, the brothel-keeper, took place yesterday by Constable Snow, on a warrant charging her with larceny from a dwelling. The woman has only been in the employ of Fannie Hall a short time, but long enough it seems for her to ply her kleptomaniac tendencies to their full measure. Numerous articles were missed from the house at various times, until finally her apartments in a house on an adjoining block were searched, and the stolen property found. The woman was taken before Justice Bently, who allowed the woman to go on her own recognizance until her preliminary examination was called today." "Assault and Battery.—The police judge was called upon yesterday to inquire into a case of assault and battery wherein Eben P. Torrey and Fannie Hall were charged with beating and striking Mrs. Flora Thomas, the colored woman, late in the employ of Hall, and now under arrest for larceny from the former's den of infamy." That said publication was false, scandalous, and defamatory. And for a second cause of action it is alleged that on October seventh of that year, the defendants wrongfully published in the Weekly Bedrock Democrat, a newspaper published at Baker City, of which they were the owners and publishers, the same words concerning the plaintiff. The defendants, after denying the material allegations of the complaint, alleged that the language so published was true, and set forth other

facts in mitigation of damages. A reply having put in issue the allegations of new matter contained in the answer, a trial was had; and, after the plaintiff had introduced her evidence and rested, the court, upon motion, granted a nonsuit, and rendered judgment against the plaintiff for the costs and disbursements of the action, from which judgment she appeals.                REVERSED.

For appellant there was a brief by *Messrs. King and Saxton* with an oral argument by *Mr. Will R. King.*

For respondents there was a brief and an oral argument by *Mr. W. F. Butcher.*

Opinion by MR. JUSTICE MOORE.

1. The defendants contend that the notice of appeal does not describe or identify the judgment, and that the bill of exceptions does not contain all the evidence introduced by the plaintiff, and for these reasons move to dismiss the appeal. The material part of the notice of appeal, directed to the defendants and their attorneys, is as follows: "You, and each of you, will take notice that the above named plaintiff, Cora Thomas, appeals to the Supreme Court of the State of Oregon from the judgment of the Circuit Court of the State of Oregon for Baker County, made and entered in the above entitled action on the thirteenth day of December, eighteen hundred and ninety-five, sustaining defendants' motion for a nonsuit, and in favor of said de-

fendants and against said plaintiff, Cora Thomas, for the sum of their costs and disbursements in said action, taxed at —— dollars, and direction that execution issue therefor; and you will take notice that said plaintiff appeals from the whole and every part of the said judgment, and that upon said appeal, plaintiff intends to rely upon the following errors." In *Crawford* v. *Wist*, 26 Or. 596, (39 Pac. 218,) it is said: "The tendency of the court as indicated by recent decisions is to construe notices of appeal liberally, and hold them sufficient if, by fair construction or reasonable intendment, the court can say that the appeal is taken from the judgment in a particular case." Tested by this rule, the court has no doubt that the appeal is taken from the judgment of which the plaintiff complains. We fail to see how the notice of appeal could be made much more specific. It is true the amount of the costs and disbursements is not stated therein; this is ascertained by the clerk after judgment as incident thereto; and, while it becomes a part thereof when taxed, its insertion in the notice, except on appeal from the taxation, must necessarily be unimportant, for it is the judgment and not an incident thereof from which the appeal is taken.

2.   It has been settled by an unbroken line of decisions that the action of the trial court in sustaining or overruling a motion for a judgment of nonsuit, or any other ruling based upon a consideration of the evidence, will not be reviewed in this court unless it satisfactorily appears that the bill of excep-

tions contains all the evidence upon which the court was called to pass: *Fulton* v. *Earhart*, 4 Or. 61; *Parker* v. *Montieth*, 7 Or. 277; *State* v. *Tom*, 8 Or. 177; *Hayden* v. *Long*, 8 Or. 244; *State* v. *Jackson*, 9 Or. 457; *State* v. *Lee Yan·Yan*, 10 Or. 365; *Woods* v. *Courtney*, 16 Or. 121 ( 17 Pac. 745 ); *Atterberry* v. *Portland and Willamette Valley Railway Company*, 18 Or. 85 ( 22 · Pac. 527 ); *Johnston* v. *Oregon Short Line Railway Company*, 23 Or. 94 ( 31 Pac. 283 ); *Hedin* v. *Surburban Railway Company*, 26 Or. 156 ( 37 Pac. 540 ). The bill of exceptions, among other things, recites that " At the trial of said cause, after plaintiff had introduced the testimony of her witnesses and rested, defendants, by their counsel, filed a motion for a judgment of nonsuit, which motion the court then and there sustained, to which ruling of the court, counsel for plaintiff then and there excepted, which exception was allowed. The testimony upon the part of plaintiff, the rulings of the court upon the testimony offered by plaintiff, and the exceptions of counsel for plaintiff to said rulings were as follows." To this the judge appended a certificate, of which the following is an extract: "I further certify that the foregoing bill of exceptions contains all of the evidence offered by the plaintiff upon the trial of said cause up to the time that plaintiff rested her case in chief, and defendants filed their motion for a nonsuit." The point relied upon in support of the defendants' motion is that the bill of exceptions does not contain the record of the cross-examination of the plaintiff's witnesses, but the certificate of the judge thereto is binding upon

us, and from it we must conclude that there was no such record, and hence the motion to dismiss the appeal must be overruled.

3. This brings us to a consideration of the action of the trial court in granting the judgment of nonsuit. An examination of the bill of exceptions shows that plaintiff introduced evidence at the trial, a summary of which is as follows: That on October fifth and seventh, eighteen hundred and ninety-five, the defendants were the editors and publishers of the Morning Democrat and the Weekly Bedrock Democrat, newspapers published at Baker City, and that on said dates the alleged libelous articles were published in said papers respectively; that the plaintiff had not been arrested; that the articles referring to Flora Thomas related to and were published of and concerning the plaintiff, Cora Thomas, but no evidence was offered tending to prove the allegation of the complaint that "said publication was false, scandalous, and defamatory." It is contended that the article so published imputed to the plaintiff the commission of a felony, that its tendency was to expose her to public hatred and contempt, and to render her subject to shame and disgrace, and therefore libelous *per se;* that the burden of proof was cast upon the defendants to establish their plea of justification; that the words being libelous *per se,* the law will presume that the publication was false, scandalous, and defamatory, and, although these facts were alleged in the complaint, the plaintiff was under no obligation to offer any evidence thereof

until the defendant had produced evidence tending to prove their plea of justification. The right of personal security which has been transmitted to us from Magna Charta, and incorporated into the fundamental law of this state, guarantees to every member of society the preservation of his good name from detraction, and for any infringement of this right the law furnishes an adequate remedy: Constitution of Oregon, Art. I, § 10; 2 Kent's Commentaries, *16. Written or printed words, having a greater capacity to injure, give to the person who is the subject of a false charge a right of action which the same language when merely spoken would not afford: Townshend on Slander and Libel, § 18. The reason usually assigned for the existence of this rule is the degree of injury inflicted, which is measured by the effect it produces upon the public mind. The written or printed language manifests a greater degree of deliberation, and justifies an inference that it is the result and expression of a settled conviction. In a country in which nearly all are more or less educated, the local newspaper must necessarily disseminate information to a greater number, and with more rapidity and certainty, than oral communications, and when such newspaper contains a false charge preferred against any person in the vicinity, the evidence thereof remains as long as the publication exists. The spoken language, however, is frequently the result of hasty judgment, or prompted by excitement or passion, to which little importance is attached by the hearers, and the power of the wrongdoer to inflict injury

is often at an end when the utterance has died
upon the ear. The law, recognizing these reasons,
attaches much more importance to the deliberate
written or printed language, and rightfully holds
that some charges are *prima facie* actionable as
libel that would not be actionable in slander unless
actual injury is alleged and proved to have resulted
therefrom: Cooley on Torts, 204.

All language that necessarily must or naturally
and presumptively will occasion pecuniary damage
to the person of whom it is spoken is actionable
*per se:* Newell on Defamation, Slander, and Libel,
181; Townshend on Slander and Libel, § 146. "Any
false and malicious writing published of another,"
says Judge Cooley in his work on Torts, 206, "is
libelous *per se,* when its tendency is to render him
contemptible or ridiculous in public estimation, or
expose him to public hatred or contempt, or hinder
virtuous men from associating with him." The lan-
guage complained of charges the plaintiff with hav-
ing been arrested for the commission of the crime
of larceny from a dwelling; comments upon her
kleptomanic tendencies, and states that stolen prop-
erty was found in her apartments, and under the
definition above given was libelous *per se,* unless its
publication was privileged. The organic law of the
state demands that justice should be administered
openly (Constitution of Oregon, Art. I, § 10); and
this being so, an editor may publish in his newspa-
per a fair report of any judicial proceeding, not *ex
parte,* except when, from the nature of such proceed-
ing, it would be against public policy to do so, for

the public, having a right to attend any trial, may read what it could hear if present, and hence the publication of such a report rebuts the inference of malice, and excuses the editor on the ground of conditional privilege: Townshend on Slander and Libel, § 229. The same learned author in a note to the next section says: "The editor of a newspaper has the right to publish the fact that an individual has been arrested, and upon what charge, but he has no right, while the charge is in course of investigation before the magistrate, to assume that the person accused is guilty, or to hold him out to the world as such." The publication complained of assumed that the plaintiff was guilty of larceny before she had been convicted thereof, and such assumption being unwarranted cannot be excused as a conditional privilege, and hence the charge is libelous *per se.*

4. The plaintiff having been charged with the crime of larceny, malice is implied by law, and the burden of disproving it was cast upon the defendants: *Usher* v. *Severance,* 20 Me. 9 (37 Am. Dec. 33); *Godshalk* v. *Metzgar* (Penn.), 17 Atl. 215. The law presumes that a person is innocent of a crime or wrong: Hill's Code, § 776, subdivision 1. So, where the publication charges an indictable offense, the presumption of innocence is *prima facie* evidence of falsity and want of probable cause, and sufficient to compel the defendants to allege and prove the truth of the charge: *Conroy* v. *Pittsburgh Times,* 139 Pac. St. 334 (11 L. R. A. 725, 21 Atl. 154). "The

falsity of defamatory words," says HOLT, C. J., in *McIntyre* v. *Bransford* (Ky.), 17 S. W. 359, "is presumed, because the law will not presume misconduct in a person. If libelous *per se*, malice is also presumed; and if the defendant pleads their truth, he must prove it, or, in the absence of any other defense, respond in damages, at least to some extent. If, however, their truth be shown, he is not liable, although he may have been actuated by malice." The rule is ancient and also well established that where the law presumes a fact it need not be stated in the pleading: 1 Chitty on Pleading, * 221; Bliss on Code Pleading, § 175; Boone on Code Pleading, § 11. The publication being presumed false, scandalous, and defamatory, the allegation of these facts was unnecessary and immaterial; and this being so, the legal presumption, until disputed, supplies the necessary evidence, and the plaintiff was under no obligation, in the first instance, to offer any evidence in support thereof: Bliss on Code Pleading, § 361; *Hunt* v. *Bennett*, 19 N. Y. 173; *Cooper* v. *Phipps*, 24 Or. 357 (22 L. R. A. 836, 33 Pac. 985). "Where a party," says LEONARD, J., in *Gilson* v. *Price*, 18 Nev. 109, (1 Pac. 458,) "grounds his right of action upon a negative allegation he must prove it. It is then material, and a denial raises a material issue. But it is otherwise if he inserts in his complaint a negative allegation which he need not prove in order to make out a *prima facie* case." The plaintiff did not base her right of action on the negative allegations contained in the complaint, and from the evidence in-

troduced it appears that she made a *prima facie* case entitling her to nominal damages, at least. Under this view of the case, the court erred in sustaining the motion for a nonsuit, for which reason the judgment is reversed, and a new trial ordered.

REVERSED.

Decided at PENDLETON, July 18, 1896.