THOMAS J. WATTS *vs.* BOSTON TOW-BOAT COMPANY.

Suffolk.    January 12, 1894. — May 18, 1894.

Present: FIELD, C. J., ALLEN, MORTON, & BARKER, JJ.

*Personal Injuries — Due Care.*

The plaintiff, who was employed by the defendant on a steam tug which was engaged by daylight in towing a barge, while looking out for the bow line of the tug was ordered by the captain to look out for the stern line.   In responding in haste to the order he stepped with one foot on the iron cover or grating of a lazarette or round hole in the deck where he had to stand to reach the stern line, and the cover or grating slipped partially off and tipped, letting one of his feet into the hole and injuring him.   The plaintiff testified that in the course of his duty he was obliged to look out for the stern line more than once a day ; that he knew that the cover or grating, on account of accumulated rust and wear, would slip, but that he had never before known it to tip; that it was his duty to take off and put on the cover of the lazarette, and that he had frequently done so, sometimes several times a day, for a period of eight months previous to the accident ; and that during that time the cover had been in the same condition, ordinary wear and tear excepted, and that he was aware of its condition, but of this there was no evidence that he had ever made complaint to any one.   *Held,* that the plaintiff was not in the exercise of due care, and that he was not entitled to recover.

TORT, for injuries received while in the employ of the defendant, by falling into a hole in the deck of a steam tug owned by the defendant.

Trial in the Superior Court, before *Thompson*, J., who allowed a bill of exceptions, in substance as follows.

On November 18, 1891, at about eleven o'clock in the forenoon, the tug Argus, on which the plaintiff was employed, was towing a barge up the Mystic River, and just after the two had passed through a drawbridge and the tow lines which had been thrown off for that purpose had again been taken up by the tug, the force of the tide running between it and the barge caused a strain upon the connecting lines, and the stern line began to render or slip on the bits of the tug, around which it was secured. The captain thereupon cried out, " What's the matter with that stern line ?   Look out for that stern line ! "   The plaintiff, who was looking out for the bow line, rushed to the stern to make another turn of the stern line around the bits.   As he did so, he

stepped with one foot on the iron cover of a lazarette, so called, being a round hole in the deck where he had to stand to reach the stern line. The cover of the hole slipped partially off the opening and tipped, letting one of his feet into the hole, and thereby causing his injuries. The lazarette measured about eighteen inches on the inside, and was surrounded by an iron rim. It was provided with an iron grating which set down into the opening on a level with the deck, and with an iron cover which set over the rim of the lazarette about an inch above the deck.

The plaintiff testified, on cross-examination, that he was so dazed by his injuries that he was unable to state positively whether it was the iron cover or the grating upon which he stepped. The plaintiff also stated that he knew, prior to the accident, that the iron cover, on account of accumulated rust and wear, would slip, but never knew it to tip before.

He also testified that it was part of his duty to take the cover off and put it on, and that he did so very frequently, almost every day and sometimes several times a day, for eight months just previous to the accident; that before this period of eight months he had worked on the Argus at different times; that both the cover and the grating had been in exactly the same condition, except the ordinary wear and tear, all the time; and that he was fully aware of their condition. There was no evidence that the plaintiff had ever complained to any one of the condition of the lazarette's cover or grating. He testified further, that in the course of his duty he was obliged to look out for the stern line more than once a day.

One Hafey, the cook on board the tug, testified that immediately after the accident he ran to pick up the plaintiff and found him lying alongside the lazarette bleeding from a wound, and that the iron cover of the lazarette was at that time resting on the roof of the deck-house, a few feet away, and that the iron grating was lying beside the plaintiff near the lazarette to which it belonged. He also testified that the grating was rusted and worn smooth from age, and had a piece broken out of it, and that he never knew it to tip before although he had heard of others tipping.

This was all the material evidence introduced by the plaintiff.

The defendant introduced evidence on points not necessary to be stated, but offered no testimony touching the accident.

At the conclusion of the evidence the defendant requested the judge to rule that the action could not be maintained. The judge ruled as requested, and directed the jury to return a verdict for the defendant; and the plaintiff alleged exceptions.

*F. P. Curran*, (*M. B. Coogan* with him,) for the plaintiff.

*J. Lowell, Jr.*, (*S. H. Smith* with him,) for the defendant.

FIELD, C. J. The exceptions recite as follows: "He [the plaintiff] also testified that it was part of his duty to take the cover off and put it on, and that he did so very frequently, almost every day and sometimes several times a day, for eight months just previous to the accident; that before this period of eight months he had worked on the Argus at different times; that both the cover and the grating had been in exactly the same condition, except the ordinary wear and tear, all the time; and that he was fully aware of their condition. There was no evidence that the plaintiff had ever complained to any one of the condition of the lazarette's cover or grating. He testified further, that in the course of his duty he was obliged to look out for the stern line more than once a day." "The plaintiff also stated that he knew, prior to the accident, that the iron cover, on account of accumulated rust and wear, would slip, but never knew it to tip before."

It is not absolutely certain whether the plaintiff stepped upon the grating or the cover, but it is probable that he stepped upon the grating, which tipped and let one of his feet into the hole. According to his own testimony, the plaintiff knew as well as anybody, perhaps better than anybody else, the defects, if there were any, in the grating and the cover, and the danger of stepping upon the grating or the cover when either was placed over the hole. The plaintiff was required to look after the stern line, and it was necessary for him to do this in a hurry; but he was permitted to do it in his own way, and it was daylight at the time. Upon the testimony of the plaintiff himself, we think it appears that he was wanting in due care. See *Lothrop v. Fitchburg Railroad*, 150 Mass. 423.

*Exceptions overruled.*