FORREST E. WILSON *vs.* STEEL EDGE STAMPING AND
RETINNING COMPANY.

Suffolk.   November 22, 23, 1894. — March 6, 1895.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Personal Injuries — Master and Servant — Dangerous Machine — Breach of*
*Duty to give Warning or Instruction — Contributory Negligence — Action.*

A., who was nearly twenty-one years old, and who two years previously had been
employed in a factory for several weeks, working some of the time with a cir-
cular saw, applied at B.'s factory for work. B.'s superintendent took him to a
workman, and asked the latter if he had any work for A. to do. The man took
A. to a circular saw, and asked him if he had ever run a saw; and A. replied
that he had a very little, but was not an experienced hand. The man then set
the gauge and ran through two or three sticks, and then told A. to go to work.
A. did so, and the man watched him run through two or three sticks and then
went away, giving no instructions to A., who asked for none, and who informed
no one that he was in need of instructions. He continued to work upon the saw
for ten days, when he was injured. *Held*, in an action by him against B. for
his injury, that at the time when the accident occurred he was not so young
and inexperienced that it was a breach of duty on B.'s part not to give him
warning or instruction.

A workman who feeds a circular saw by means of his hand, knowing a safer prac-
ticable method, is not in the exercise of due care.

TORT, for personal injuries occasioned to the plaintiff, while
operating a circular saw in the defendant's employ, by the al-
leged negligence of the defendant.   Trial in the Superior Court,
before *Dunbar*, J., who, at the defendant's request, directed the
jury to return a verdict for the defendant, and reported the
case for the determination of this court.   If the ruling was
right, judgment was to be entered on the verdict; otherwise, a
new trial was to be granted.   The facts appear in the opinion.

*D. E. Ware*, for the plaintiff.

*A. Hemenway & G. Cunningham*, for the defendant.

BARKER, J.   While at its best estate the circular saw is one
of the most dangerous machines in common use, there was in
the present case evidence from which the jury might have found
that there were bull's-eyes in this saw, that its arbor had been
out of true, that holes and depressions had developed in the saw-
table, and that the gauge in use was in poor condition, and

liable to work loose. If the plaintiff had met with an accident due to any of these causes, and to which his own carelessness did not contribute, it might have been a question for the jury whether the defendant had used that care which the law required of him to provide and keep reasonably safe machinery and appliances for the use of his workmen, although it is to be remarked that the alleged defects were pretty obvious, and that there seems to have been no change in the condition of things after the plaintiff entered the defendant's employment. We do not think that at the time when the accident occurred he was so young and inexperienced that it was a breach of duty on the part of the defendant not to give him warning or instruction.

He was almost twenty-one years of age, having been born in Maine, and lived there until fourteen, when he removed to Massachusetts. He lived with his father, who after his removal to this State was in charge as superintendent of the town farm of Wrentham. He attended school in Maine and Massachusetts until sixteen years of age. Up to the time when he was eighteen his only work had been farming and driving team, but the winter he was eighteen he worked six weeks in a wooden-box factory, some of the time working with a matcher and double cut-off circular saw, and the next winter he worked four months in the same factory. How he was employed during the winter of 1892 does not appear. On August 2, 1892, when twenty years and ten and a half months old, he went to the defendant's factory and applied to the superintendent for work. He was asked if he had ever run a circular saw, and answered that he had a very little, but was not an experienced hand. It was arranged that he should begin work the next day but one. He was then put to work planing with a planing machine, being first asked if he had ever done any planing, and answering that he had not, but that he had taken away the planed stuff as it came from the machine. The man who asked the question then set the gauge of the plane, ran through one or two pieces, got a boy to take away the stuff as it was planed, and left the plaintiff to work there all day. He seems to have asked no instructions as to planing, and to have needed none. In the factory, which was about one hundred and fifty feet long by fifty feet wide, were planers, saws, turning lathes, and boring machines. The next

morning the superintendent took him to a man who was filing saws at one end of the factory, and asked the man if he had any work for the plaintiff to do.  The man took the plaintiff to a circular saw some fifteen feet away, and asked the plaintiff if he had ever run a saw.  The plaintiff answered that he had a very little, but was not an experienced hand.  The man then set the gauge and ran through one or two sticks, and then told the plaintiff to go to work.  He did so, and the man watched him run through one or two sticks, and then went away, giving the plaintiff no oral instructions and the plaintiff asking for none, and not informing any one that he was in need of instructions. This was upon August 5, and he continued to work upon the saw until August 15, when he was hurt.  This statement does not show that the plaintiff was in need of instruction or warning when he began to work upon the defendant's saw, and the defendant, in the absence of any direct request on the plaintiff's part, was justified in putting him to work without other showing than that which was given.

While the plaintiff was using the saw, before the time when his hand was hurt, he had ample opportunity to learn the dangers to which that particular saw exposed him in its use.  The gauge loosened and got out of place and caused the wood to bind; the saw heated, burned the wood, and stopped.  Pieces of lumber which he was sawing had been made by the saw to fly up and fly back, and to fly back with great force.  The work he was doing was the cutting of pieces of plank, some eighteen inches in length and some six inches wide, into thin slats or cleats.  In doing this he stood at the side of the table toward which the saw revolved, and fed the pieces of the saw.  Opposite him stood another workman, who took away the thin slat or cleat, and returned to him the rest of the piece to be again passed through the saw.

The saw-bench was equipped with a feed roll, which pushed the wood along until its rear end was within about four inches of the saw.  Then the feed roll was no longer in contact with it, and the method of propelling the wood through was to follow it with another of the pieces to be sawn.  The plaintiff had sawed all the pieces but one, and so had no other like piece with which to follow the one on which he was at work after it

left the feed. The usual and safe method in that case is to follow the piece which is being sawed with some other piece of wood, thus pushing it forward. The plaintiff knew this method, and had used it. The final piece which he was sawing was about six inches wide, and, instead of pushing it forward with some other stick, he pushed it with his hand. His hand was on the outer edge of the piece of plank pushing it through the saw, when the piece jumped up and threw his hand on to the saw. It is apparent that the extreme rear end of the wood was within four or five inches of the teeth of the saw, and that the plaintiff's hand must have been still nearer and pushing towards them.

This was an extremely dangerous thing to do. The plaintiff not only knew the dangers ordinarily incident to the use of a circular saw, but he knew that this particular saw would bind and heat, and that its gauge would work loose, and that it would make the wood it was sawing fly up and fly back with force. For him with this knowledge to risk his hand by placing it on the outer edge of the rear end of the stick, and attempting with his hand to hold the stick and to push it forward through the saw, was that disregard without adequate reason of great and obvious danger which the law holds to be negligence. The accident occurred so quickly that he cannot tell just how the stick was thrown. But even if it was thrown somewhat differently from those sticks which he had repeatedly seen fly up and fly back, the danger that a hand pressing against the saw a stick which was liable to be thrown would be carried against the saw if the wood should fly, is so obvious, that the plaintiff must be charged with knowledge of it. *Richstain* v. *Washington Mills*, 157 Mass. 538, 541, and cases cited. *Downey* v. *Sawyer*, 157 Mass. 418. *Goldthwait* v. *Haverhill & Groveland Street Railway*, 160 Mass. 554. *Connolly* v. *Eldredge*, 160 Mass. 566. *Watts* v. *Boston Tow-Boat Co.* 161 Mass. 378.

*Judgment on the verdict.*