FRANK O. YOUNG *vs.* IRA H. RANDALL.

Kennebec.    Opinion April 21, 1908.

*Master and Servant.   Negligence.   Assumption of Risk.*

When one enters into the service of another, by virtue of the employment he assumes the risk of all obvious and apparent dangers which are incident to the business, and of all which, by the exercise of reasonable care, one of his age, care and experience ought to know and appreciate.  He also assumes the risks of all dangers, of which he knows and which he should appreciate whether obvious and visibly apparent or not.

The plaintiff while operating a swinging circular saw in the defendant's employ sustained personal injuries resulting in the loss of the second and third fingers of the left hand and the mutilation of the fourth finger so as to render it useless, and caused by the alleged negligence of the defendant. The plaintiff thereupon brought an action against the defendant and recovered a verdict for $1000.  Assuming all the facts to be as claimed by the plaintiff, *Held:* That the action cannot be maintained and the verdict is so clearly wrong that the same must be set aside.

On motion by defendant.    Sustained.

Action on the case to recover damages for personal injuries sustained by the plaintiff while operating a swinging circular saw in the defendant's employ, resulting in the loss of the second and third

fingers of the left hand and the mutilation of the fourth finger so as to render it useless, and caused by the alleged negligence of the defendant in that the saw table "was not provided with any standards or upright pieces sufficiently near the path of the saw, so that a log or bolt could rest against the same and be held steadily in place and prevented from swinging in and upon said saw, and thereby said plaintiff's employment was made unnecessarily dangerous."

Plea, the general issue. Verdict for plaintiff for $1000. The defendant then filed a general motion to have the verdict set aside.

The case is stated in the opinion.

*Williamson & Burleigh*, for plaintiff.

*A. M. Goddard*, for defendant.

SITTING: EMERY, C. J., STROUT, SAVAGE, SPEAR, CORNISH, JJ.

CORNISH, J. Tort for personal injuries while operating a swinging circular saw in defendant's employ. The defendant is a manufacturer of lumber and manager of the Augusta Lumber Company, which operates a large mill at Augusta. In the spring of 1905, he purchased a lot of standing timber in the neighboring town of Belgrade and sent a crew there to cut and manufacture the same. Among them was the plaintiff who was the owner of a team of four horses and of a portable sawing machine driven by a gasoline engine. After working with his team five or six weeks yarding logs, the plaintiff started his sawing machine and with the assistance of Mr. Weston, the foreman, attempted to saw a small lot of ash logs into shovel handle bolts about forty-four inches long. This proved impracticable as the logs, varying in length from twenty-five to thirty feet, were too heavy to be handled and sawn easily with his machine which was constructed in the ordinary way for sawing cord wood, with a stationary circular saw and a push or sliding table.

The foreman then suggested the necessity of a swinging saw with a stationary table, and informed Mr. Randall through the plaintiff where a second hand machine of that sort could be obtained. Mr. Randall thereupon procured the saw and sent it, with necessary

shafting and pulleys purchased elsewhere, to Belgrade, and with it went Mr. Dixon his millwright, who was to have charge of setting it up.

The temporary machine was then hastily constructed. A table or platform about eighteen inches wide and two feet high was built of planks resting on blocking. The left end of this table, viewed from the operator who stood in front of it, was connected with a run provided with rolls over which the logs were pushed by hand lengthwise from the ground upon and along the table. Against the side of the table opposite the operator stood three heavy logs or posts set firmly in the ground and extending above the table six or eight feet, carrying on their tops the bearings or boxes which held the main shaft. One of these posts stood within a few inches of the right end of the table, another toward the left end and eight feet from the first, and between the two was a third, the exact location of which is in controversy. At the right of this middle post and one foot from it, according to the plaintiff, or two and one-half inches from it according to the defendant, the saw frame or ladder was suspended from the main shaft in such a manner that the circular saw attached to the lower end could be swung forward and backward in the slot, extending part way across the table, by means of an oxbow bolted to the ladder and extending forward toward the operator. The distance from the saw to the right end of the table was the exact length of a bolt, forty-four inches. Four men were employed in working the machine, two at the left with cant dogs to push the logs upon the table and hold them in place, one to operate the saw, and one at the right to keep the end of the log flush with the end of the table, and to remove the bolts. In operation the logs were pushed upon the table, the larger end ahead, the scarf was first sawn off, then the various bolts and if the smaller end was less than six inches in diameter, that portion was used for cord wood.

As the saw was hung somewhat higher than the table, it had a natural tendency in cutting, to draw the logs toward and under it, a tendency which was stronger in the smaller logs, and which could be

resisted only by having proper guards and supports on the back of the table. The failure of duty alleged by the plaintiff in his writ is that the saw table "was not provided with any standards or upright pieces sufficiently near the path of said saw, so that a log or bolt could rest against the same and be held steadily in place and prevented from swinging in upon said saw." The plaintiff admits the existence of the three posts before described, but says they were insufficient for the purpose, as there was a space of forty-four inches at the right of the saw, and of one foot at the left without any support or guard whatever, so that in sawing a stick of such a length that it reached from the right end of the table to a point between the saw and the post on the left, it had no support whatever, except at the extreme right end, and the action of the saw tended to pull it in toward itself taking with it the hand of the operator resting upon the stick. The defendant met this issue by offering evidence tending to show that the distance from the saw to the post on the left was only two or three inches, that four or five inches at the right of the saw was an additional post firmly set in the ground and extending above the table, placed there to serve this very purpose, and also that guides or guards were attached to the back of the table, the one at the left of the saw extending from post to post, being a timber four inches square, and the one at the right, from post to post, a plank two by six set on edge.

Here was a sharp issue of fact, the plaintiff admitting that if the fourth post and the guards were there at the time of the accident, the table was reasonably safe, and the defendant admitting that if they were not there it was negligently constructed.

The jury found for the plaintiff upon this as upon all other issues and their verdict the defendant asks to be set aside. It is unnecessary to consider the question of the defendant's care or want of care in the construction of the machine. The plaintiff is in this dilemma. If the defendant was not guilty of negligence in this respect the plaintiff admittedly cannot recover. If the defendant was guilty of negligence the plaintiff is precluded from recovering because of his own knowledge of the careless construction and his assumption of the attendant risks. This is a fatal point in the plaintiff's case.

The particular danger on which he bases his right to recover was the lack of protection against the tendency of the saw to draw the logs to itself. But this was no concealed or hidden danger. It was obvious as soon as he began to operate. He felt the tendency to draw. He admits it. He saw the lack of protection, and with his experience he must or at least should have known the risk attendant upon the sawing of a stick resting against only one support. The plaintiff was not an inexperienced boy, but a man thirty years of age, of intelligence and of some experience with circular saws. He was the owner of a portable saw mill and had himself operated it six weeks or more during the previous winter, and in that time must have learned its traits. While that worked on a somewhat different plan from this, yet the difference and its effects must have been obvious to him. He had asked for no instructions before beginning work nor during its progress though Mr. Weston, the foreman, stood near by. He apparently needed none. The foreman could have told him nothing that he himself could not see and appreciate. In his writ he does not complain because no instructions were given him. He began and continued the work without protest or objection, confident of his own knowledge and experience. There is evidence that he even showed impatience when cautioned more than once by the foreman not to jump the saw and not to keep his left hand upon the log. His method of operation was to pull the swinging saw by the oxbow with his right hand, while he steadied himself by placing his left hand upon the log at the right and within five or six inches of the saw itself. He worked but little the Wednesday afternoon that the machine was completed, as the saw needed setting and filing, but began on Thursday morning and worked during the forenoon. He says that he noticed the tendency of the saw to pull the logs toward it as it cut, especially the smaller and more crooked ones, and during the forenoon "there was one log that the cant of it was kind of up and kind of crooked and it turned down as a stick naturally would, the saw pinched in the wood a mite and the log rolled toward the saw and went out through." The accident of the afternoon was practically a repetition of this. In the afternoon the plaintiff had worked but half an hour before he was injured. His

own description of the accident is clear. "Well, we had a log come up and I sawed off this scarf, and it came on and I sawed it again, I should say three or four cuts into three or four of these sticks that we used for bolts, and then there came a piece here that was just a little longer than it ought to be, about six inches longer, and I thought it was smaller than six inches, so I threw it off, but Weston wanted it sawed, — so I took it up and held it on the saw like that (illustrating) and the saw bit on to it and took my hand in." "I took hold of this saw and brought it to me and as I did, it kind of rolled this way a little and when I put the saw on she bit here and then caught and went right over like that (illustrating). I think both pieces went out under the saw that way. I know they got out of my way." On the plaintiff's own statement nothing unusual happened, nothing that the plaintiff might not himself have anticipated if the conditions were favorable. He nowhere stated that he did not see and appreciate the precise risk in question. He simply denies having worked on this particular kind of a machine prior to the day of the accident. The doctrine of assumption of risk has been so often and so fully expounded that its mere statement is sufficient.

"When one enters into the service of another, by virtue of the employment he assumes the risk of all obvious and apparent dangers which are incident to the business, and of all which, by the exercise of reasonable care, one of his age, care and experience ought to know and appreciate. He also assumes the risks of all dangers, of which he knows and which he should appreciate whether obvious and visibly apparent or not." *Babb* v. *Paper Co.*, 99 Maine, 298. See also *Mundle* v. *Mfg. Co.*, 86 Maine, 400. The application of this firmly established principle to the case at bar precludes recovery. The accident arouses our sympathy but assuming all the facts to be as the plaintiff claims, this action cannot be maintained. *Demers* v. *Deering*, 93 Maine, 272; *Wilson* v. *Steel Edge Stamping Co.*, 163 Mass. 315; *Tenanty* v. *Boston Mfg. Co.*, 170 Mass. 323; *St. Jean* v. *Tolles*, 72 N. H. 587.

The jury did not give proper consideration to the plaintiff's assumption of the risk. Whether they were unduly affected by

sympathy or by the unmaintainable position so persistently contended for by the defendant's counsel as to the ownership of the machine or by both, it is impossible to determine. But whatever the cause, the verdict is so clearly wrong that the entry must be,

*Motion sustained.*

*Verdict set aside.*