### INTERNATIONAL PAPER CO. v. ROBIN.

(Circuit Court of Appeals, First Circuit. February 18, 1909.)

#### No. 779.

MASTER AND SERVANT (§ 155*)—LIABILITY OF MASTER FOR INJURY TO SERVANT —FAILURE TO WARN SERVANT OF DANGER IN WORK.

Plaintiff had been working in defendant's paper mill for seven weeks, engaged with others in trucking rolls of paper from the mill to the cars, when a roll which he and a helper were taking through a doorway struck the top, and fell upon and injured him. The doorway was 93 inches high, while the roll was 96 inches long and weighed 1,350 pounds. The iron edge of a two-wheeled truck was run under one end of the roll, and it was tilted back at an angle, resting upon the shoulders of the two men. Several thousand rolls had been taken out during plaintiff's service, but very few were so long. He did not know the height of the doorway nor the length of the roll, and there was evidence that it was not easy to estimate the length within a few inches without measuring. *Held*, that the danger and the need of special care in that particular instance were not obvious to plaintiff, but should have been known to defendant, which was chargeable with negligence in not warning him, justifying a verdict in his favor for damages.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 310; Dec. Dig. § 155.*]

Brown, District Judge, dissenting.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the Circuit Court of the United States for the District of New Hampshire.

John Kivel, for plaintiff in error.
Henry F. Hollis, for defendant in error.

Before COLT and LOWELL, Circuit Judges, and BROWN, District Judge.

COLT, Circuit Judge. This was an action on the case to recover damages for injuries sustained by the plaintiff while in the employ of the defendant. The plaintiff was injured while engaged in trucking a long, heavy roll of paper through the door of the finishing room in defendant's mill to the cars. The injury was caused by the top of the roll striking against the top of the door, whereby the roll fell upon the plaintiff. The jury returned a verdict for the plaintiff.

The exceptions taken by the defendant during the trial in the court below to the admissibility of evidence, to portions of the judge's charge, and to his refusal to give certain instructions have been expressly waived. The only exceptions which have been urged in this court, and which are contained in the assignment of errors, are to the refusal of the court below to grant the defendant's motion for a nonsuit at the close of the plaintiff's evidence, and to the refusal of the court below to grant the defendant's motion to direct a verdict for the defendant at the close of the entire evidence.

These alleged errors present for our consideration the single question whether there was any evidence that would warrant the jury in finding a verdict for the plaintiff.

The evidence in the case tended to prove the following facts:

On December 21, 1906, about 7 o'clock in the evening, the plaintiff and a helper were conveying a roll of paper upon a two-wheeled truck from the finishing room, through the beater room, to the cars, in the defendant's mill. In passing through the door between the finishing room and the beater room, the top of the roll struck against the top of the door, in consequence of which the roll came down upon the plaintiff and injured him. The roll was 96 inches long, 29 inches wide, and weighed about 1,350 pounds. When upon the truck the lower end of the roll was raised about 10 inches above the floor. The door was 93 inches high. The roll was trucked in a canting position, and rested on the shoulders of the plaintiff and the helper. When carried at an angle of 42 degrees, the top of the roll would clear the top of the door by 2 inches, and at this angle 150 pounds weight would rest on the shoulders of each of the truckers. During the time of the plaintiff's employment, about seven weeks, 4,500 rolls had been trucked through this door. The rolls varied in length from 17⅜ inches to 96 inches. Of these 4,500 rolls, about 40 were 96 inches in length, 8 were 89 inches, 135 were 87 inches, and 7 were 86 inches. To keep the iron plate of the truck from rubbing the floor, it was necessary to tip the roll backward after it was placed on the truck. There were eight men engaged in trucking, or four crews of two each. The usual and customary truck used for conveying all the rolls, including the 96-inch rolls, was the two-wheeled truck. There were also furnished

some four-wheeled trucks, which were occasionally used. It was more economical to use the two-wheeled truck. The floor of the beater room was three inches lower than the floor of the finishing room, so that there was a downward slope for 6 feet 10 inches in passing from the finishing room to the beater room. The passageway in the beater room, at a distance of 6 feet 10 inches from the doorway, was 4 feet in width. The plaintiff had passed quite through the doorway when the top of the roll hit the top of the door. Some witnesses testified that they had never known the top of the roll to strike the top of the door. One witness, however, testified that he had known the rolls to strike twice before, while another witness testified that he had known the rolls to brush the top of the door a few times. Upon this point the foreman, Montminy, testified as follows:

"Q. Now, did you know that a 96-inch roll was likely to hit the top of that door? A. Yes, sir. Q. And just before the accident you saw that it was likely to hit the top, didn't you? A. Yes, sir. Q. And you were just about to speak and warn them when it did hit, weren't you? A. Yes, sir. Q. How did it happen that you didn't see it hit in time to warn? A. It came to my mind. Q. How did you happen to be looking that way? A. I saw him going through. Q. How high above the top of the door was the top of the roll when it did strike? A. I cannot tell. Q. And it came over your mind that you ought to warn the men? A. Yes, sir. Q. And you didn't have time to do it? A. I didn't have time to do it; it was too late."

On the day of the accident the plaintiff was ordered by the foreman to truck this 96-inch roll. The plaintiff and his helper, Gauvin, put the iron edge of the truck under the bottom of the roll, which stood upright, and then two other men pushed the roll over onto the truck.

The plaintiff and Gauvin then proceeded with the truck and roll towards the doorway. The plaintiff was on the left side, assisting in the handling of the truck, and was supporting a portion of the weight of the roll on his right shoulder. While going through the doorway, the plaintiff was watching his side so as not to hit the sides of the run. He was cautioned against hitting the sides of the door lest it might injure the paper. The plaintiff did not know the dimensions of the roll, nor the height of the door, nor that there was any danger that the top of the roll would hit the top of the door.

No orders or instructions were given as to how the work should be done, nor any rules as to the manner of doing it. The plaintiff was not warned to lower the roll so as not to hit the top of the door. The plaintiff did not remember that he had previously trucked any 96-inch rolls. The foreman, however, testified that he had trucked several of these rolls. The plaintiff was 34 years of age, and a man of ordinary intelligence, and he had previously worked in the woods, logging, and in a sawmill.

On the question of judging the height of a roll, the foreman testified as follows:

"Q. Can't you tell how high that roll of paper is without measuring it? A. No, sir; I cannot tell exactly. Q. Well, are you sure that it is more than 84 inches? A. Yes, sir, I am. Q. Are you sure that it is more than 90 inches? A. I am positively sure. Q. You think it is more than 90 inches? A. I cannot prove it. Q. And it may be 92, and it might be 94? A. Ninety-

four—I cannot tell. Q. And it may be 96? A. I have not any rules with me. Q. And it may be 98? A. It cannot be 98. Q. Cannot be? Well, can it be 96 possibly? A. Perhaps. Q. But you think it is not as high as 96? A. I don't believe by the looks of it it is 96 inches. Q. Can't you tell within half a foot without measuring it? A. No, sir."

The plaintiff insists that the negligence of the defendant was two-fold:

(1) In furnishing a door too low for the safe passage of 96-inch rolls.

(2) In failing to warn the plaintiff of the concealed, or not obvious, danger.

On the other hand, the defendant contends:

(1) That the plaintiff's injuries happened through his negligence, and not that of the defendant.

(2) That the defendant furnished four-wheeled trucks upon which 96-inch rolls could be safely transported through the door of the finishing room to the cars.

Upon full and careful consideration of the evidence, we think this is one of those cases in which it was the duty of the defendant to warn the plaintiff of the danger of the top of the roll hitting the top of the door. In other words, we think, upon this evidence, the jury might properly have found that the danger was not obvious, and hence that the defendant was guilty of negligence in not warning the plaintiff. This conclusion is founded upon the following considerations·

The roll in question was 96 inches long, 29 inches wide, and weighed 1,350 pounds. The door was 93 inches high. It appears that this roll would strike the top of the door unless it was tilted on the truck at an angle of about 42 degrees. The foreman testifies that he could not tell the height of a roll within half a foot. It was impossible, therefore, for the plaintiff to measure accurately the relative heights of the roll and the door, and so determine the angle at which the roll should be carried in order to clear the top of the door. Further, the plaintiff's position was such as he approached the door with the roll on the truck that he could not judge of the angle at which the roll must be carried in order to clear the top of the door. He was of necessity in a position in which the end of the roll was back of him, with a portion of the weight of the roll resting on his shoulder, with his head at one side of the roll, and with his attention directed to clearing the sides of the doorway. It is also apparent that the more he tilted the roll the greater would be the weight upon his shoulder.

Again, all the 4,500 rolls which were trucked during the time of his employment would clear the top of the door when tilted in the ordinary way in which they were carried on the truck, except these few 96-inch rolls; and the plaintiff had no reason to apprehend that these rolls would not pass safely through the door when trucked in the usual method of conducting this work.

In view of the general method of carrying on this work, it may be said that a dangerous situation was created with respect to this roll into which the plaintiff was led without any warning.

This is not a case in which the plaintiff was called upon to truck a solitary roll 96 inches long through this doorway, in which case

he might be called upon to exercise great caution; nor is it a case in which all the rolls were of a uniform size of 96 inches, in which case the conditions would have been better understood and guarded against; but it is a case where a situation was created that was calculated to throw him off his guard by reason of the fact that there were several thousand rolls, and that 99 per cent. of the rolls would pass safely through the door when handled in the ordinary way, and he had no reason to suppose, and from his position could not tell, that any greater precaution should be exercised on his part with respect to this roll than was exercised with respect to the other rolls.

It is suggested that there were four-wheeled trucks, and that the plaintiff should have selected a four-wheel truck. The answer to this contention is the uncontradicted evidence that the usual and customary truck for this purpose was the two-wheeled truck. The plaintiff, therefore, had no reason to suppose that the two-wheeled truck was not perfectly safe; and, since it was the usual and proper truck for this purpose, it's use was presumably sanctioned by the defendant.

Nor can it be said that the plaintiff had the same means of knowledge of this danger as the defendant, and therefore assumed the risk. The facts in evidence do not warrant this conclusion. The plaintiff had been in the defendant's employ only six weeks. He was not aware of this danger, and it was not a matter of ordinary observation. On the other hand, it was a danger which the defendant knew, or in the exercise of reasonable care should have known.

It may also be observed that at the trial the manner of trucking and the position of the plaintiff were fully illustrated by witnesses, and the trial judge, therefore, had better means of comprehending the entire situation than this court. Under these circumstances, the conclusion of the trial judge is entitled to great weight, and it should not be disturbed unless it clearly appears that it was erroneous.

The recent case of Charrier v. Boston & Maine Railroad Company (decided by the Supreme Court of New Hampshire) 70 Atl. 1078, seems to be in point. In that case the plaintiff was engaged with a number of other workmen in pushing a coke car through a door into the shop for repairs. Ordinary coke cars which he had been accustomed to push were from 8 feet 2 inches to 8 feet 8 inches in width. The car by which plaintiff was injured was 9 feet 4 or 5 inches in width, and he was caught between the side of the car and the door.

In the opinion the court said:

"It appears that * * * he [the plaintiff] had no opportunity to measure its width, and that during a part of the brief interval he was pushing the car his view of the shop door was obstructed by a workman, and the balance of the time his work required him to take such a position, and his attention was so preoccupied in endeavoring to avoid obstacles in his path beside the track, that he did not learn of the danger to which he was subjected until he was caught between the car and the door. It also appears that the defendants knew, or ought to have known, that it was customary for the men, in pushing cars into the shop, to pass between the car and the door; and that they knew, or ought to have known, of the extra width of this car, and the danger to be encountered in pushing it into the shop by one standing at its side, and failed to inform the plaintiff of it. Under these circumstances reasonable men might properly conclude that the defendants were negligent in not informing the plaintiff of the danger, that he exercised

the care of a reasonably prudent man in doing what he did, and that he did not know and appreciate the danger to which he was subjected and assume the risk of injury."

The judgment of the Circuit Court is affirmed, and the defendant in error recovers costs in this court.

BROWN, District Judge (dissenting). This is a writ of error for review of the rulings of the Circuit Court in an action of the case for personal injuries sustained by Arthur Robin, an employé of the International Paper Company, in its paper mill at Berlin, N. H., on December 21, 1906. The verdict was for the plaintiff.

The plaintiff was engaged in trucking paper from the finishing room to the cars of a railroad. It was necessary to pass through a doorway 7 feet 9 inches high. The plaintiff and a helper on the day of the accident were trucking a roll of paper 8 feet high and 2½ feet in diameter, weighing about 1,300 pounds. A two-wheeled truck with wheels about 10 inches in diameter was used. Standing on end upon the floor the roll was 96 inches in height, or three inches higher than the door; mounted upon the truck in an upright position, about 13 inches higher than the door.

In loading the roll upon the truck, the iron edge of the truck was inserted under the bottom, and the roll was pushed over by other men until it rested against the shoulders of the truckmen, one on each side of the roll. When tipped at an angle of 42 degrees, its highest point was 7 feet 7 inches, giving 2 inches clearance. It has been estimated that in this position the weight supported by each man was approximately 150 pounds.

As the truckmen with their load were passing through the doorway the top of the roll struck the top of the doorway, and the roll fell upon the plaintiff, seriously injuring him.

The defendant in error contends that the negligence of the master was twofold: First, in furnishing a doorway too low for the safe passage of 96-inch rolls; and, second, in failing to warn the plaintiff of a concealed and not obvious danger, namely, that a roll of this character could not pass safely through the doorway.

I am of the opinion that the evidence entirely fails to show any negligence of the master in respect to the construction of the premises, or in a failure to provide suitable appliances. There is abundant testimony that there were supplied and used, not only two-wheel trucks, but also four-wheel trucks, upon which the rolls could be laid horizontally and carried through the doorway with a large amount of clearance. The injury arose not because of a defective doorway or of defective appliances, but because of the manner in which the work was done by the men. The fact that a roll of paper 96 inches long, standing on a truck 10 inches high, could not go through a doorway 7 feet 9 inches in height without being tipped to some extent was patent to ordinary observation. The judgment as to a matter of this character of a workman of mature years, who had been engaged in this business for seven weeks, was quite as good as that of the officers of the company.

While the duty rests upon the master to inform an ignorant workman of unknown and peculiar risks due to peculiarities in the business, I know of no rule of law which requires the master to inform the workman as to matters within the ordinary observation and ordinary judgment of the ordinary man. I cannot assent to the proposition that a workman who is told to move an object through a doorway is entitled to assume that he can do so without making an ordinary observation. The servant assumes not only the risks of the business, but also all such risks as are apparent to ordinary observation. The rule that a servant may rely upon a master's performance of his duties does not absolve the workman of the requirement of ordinary diligence.

The duty to give warning to a servant must be based upon a reasonable apprehension by the master that injury may follow to the servant if such warning is not given. The rule which requires of the master a reasonable foresight and apprehension of danger does not require that the master shall assume a lack of ordinary care or ordinary observation in the workman. The servant cannot justly demand that he shall be warned against risks that are as obvious to him as to the master. Roessler & Hasslacher Chemical Co. v. Peterson, 134 Fed. 789, 67 C. C. A. 295; Mississippi Logging Company v. Schneider, 74 Fed. 195, 201, 20 C. C. A. 390; Baumler v. Narragansett Brewing Company, 23 R. I. 430, 50 Atl. 841; Thompson on Negligence, §§ 4061, 4063, 4068, 4074, 4643; James v. Rapides Lumber Co. (La.) 44 L. R. A. 34, 42, 49, notes.

We have, therefore, in this case to inquire whether under the circumstances there was any matter of peculiar knowledge affecting this operation which it was the master's duty to convey to the plaintiff.

It is in evidence that the roll mounted on the truck and tipped at an angle of 42 degrees would be 7 feet 7 inches in height. There is no testimony tending to show that it was impractical to tip the roll to this angle, and there is evidence that during the plaintiff's employment many rolls of this size had been taken through this doorway; so that it may be fairly said that the cause of the accident was the fact that the roll was not tipped sufficiently, but was held in too upright a position when carried through the doorway.

It has been urged that in respect to rolls 96 inches in length there was a special and peculiar danger, owing to the unusual size of the roll. The testimony shows that during the seven weeks of the plaintiff's employment about 4,500 rolls had been shipped through this doorway, ranging from 17⅜ inches to 96 inches long. Some 30 or 40 96-inch rolls had been trucked previous to the accident, 8 89-inch rolls, and 135 87-inch rolls. All rolls of these longer dimensions, when elevated upon a 10-inch truck, required to be tipped to some extent in order to go through the doorway. The plaintiff was unable to say whether he had ever handled 96-inch rolls before, but there was positive and uncontradicted testimony that he had done so. There was no testimony to show that the plaintiff had not trucked a number of rolls of this kind safely. There is testimony that he had, and the circumstances of the case show a high probability that he had.

The danger seems to have resided in the risk of momentary forget-

fulness, or in a failure of observation of the particular roll, rather than in any danger or impossibility of doing the work with reasonable attention and care. Was the master at fault for a failure to warn the plaintiff that he might encounter rolls which would not go through the door without being tipped more than others, and that it would be necessary for him to observe the difference between long and short rolls in this regard?

The case was submitted to the jury with the instruction that the duty would not be upon the plaintiff to experiment with the roll to see in what angle it would have to be placed in order to pass through the doorway, and that he would be justified in assuming it was reasonably safe. I think this instruction was erroneous.

It is quite common to charge a master with a neglect of a duty to provide a safe working place, where the only danger arises from an unsuitable way of doing the work. The proposition that a company is negligent in taking 96-inch rolls of paper through a 93-inch doorway, and that some duty arose either to have a higher door or shorter rolls of paper, is one that cannot be supported as a matter of common sense. It is a familiar fact that high objects can be put through low doors if properly handled, and where the difficulty is in improper handling the charge of negligence should not be shifted to the master by adopting a proposition so directly contrary to the ordinary usages of manufacturing enterprises. The broad proposition that under circumstances like these a workman who is told to move an article through a doorway is entitled to assume that the doorway is large enough for the article to go through, without attention on his part to the comparative size of the door and article, cannot be accepted. It is a matter of common knowledge that men of ordinary prudence, engaged in an occupation of this kind, look to see what they are doing. Part of this plaintiff's business was loading rolls upon the trains and through the low doors of freight cars. The plaintiff was 34 years of age, and had been at work since he was 13 years old. He had worked in the woods, logging, and had worked on the logging drives in the spring; he had worked in a pulp and sulphite mill, and in the employ of the defendant paper company he had loaded paper on cars. He was familiar, upon his own testimony, with the method of getting a large roll through the low door of a car by lowering the roll by bending the leg, and he testified that it was customary, when loading cars, for the helper to look out for the top of the door and tell him when to lower. It being a necessary part of his business to make calculations concerning the relative height of doors and rolls, how can it reasonably be said that he was released from the duty of observation as to this particular door, or that as to this particular door he was entitled to assume that he need take no care?

The plaintiff in error's brief states that the real cause of the accident was the plaintiff's ignorance of the danger, through the defendant's failure to warn him thereof.

The danger was one apparent to ordinary observation. I do not think there was any question for the jury upon this point. If the plaintiff was ignorant of this danger, it was through a failure to observe what ordinary observation would have disclosed. If it was the

167 F.—59

master's duty to warn him, this must be because it was the master's duty to anticipate the failure of observation of a thing plainly observable.

As to the first proposition, that defendant was negligent in furnishing a doorway too low for the safe passage of 96-inch rolls, the evidence is ample to show that the doorway was entirely suitable for the purpose if a four-wheel truck was used, and, if a two-wheel truck was used, with care and with ordinary observation, to inform the ' workman how much he must tip his truck or bend his leg. For a failure to select a suitable truck the master is not liable. He fully performs his duty when he provides suitable appliances, and for any failure to select the proper appliances, either by the workmen or foremen, he cannot be held responsible. New England Railroad Company v. Conroy, 175 U. S. 323, 20 Sup. Ct. 85, 44 L. Ed. 181.

As to the second proposition, that warning was required because the danger was concealed, the answer is clear. There was no concealment. The roll and the door were open to observation; as open to the servant's observation as to the master's. The risk was as appreciable by one as by the other. It was in no way a risk peculiar to the special business, but a risk of a general character arising from the relative size of physical objects. The master was entitled to assume that concerning a matter of ordinary observation he and the servant were on equal terms. There is no rule of law which imposes upon a master the duty of reminding a servant of things which he knows as well as the master. So far as there was any fault in this occurrence, it was either in the selection of the wrong truck—a fault which cannot be attributed to the master—or in a failure of the servant to exercise the same care in relation to this door that he was required constantly ' by his occupation to exercise in relation to the car doors. The only warning which the master could have given was that the roll was so much higher than the door that it must be lowered somewhat more than other rolls which were higher than the door. It was a mere question of difference in degree, and not of difference in kind of work. The master is under no obligation to tell his servant to look and see what he is doing if that is the plain requirement of ordinary prudence.

For the above reasons, I am unable to concur in the opinion of the majority of the court.