Argued June 4, decided June 10, 1913.

# PREMENT *v*. WELLS.

(133 Pac. 647.)

**Master and Servant—Actions for Injuries—Evidence.**

1. In an employee's action for injuries sustained while handling lumber, where, although plaintiff attempted to show that there was a general usage among the sawmill men to furnish men handling lumber a certain kind of shoes to protect them against accidents, such usage was not established by at least two witnesses, as required by Section 801, L. O. L., and there was nothing to show that the wearing of such shoes would have been of any protection to plaintiff, the admission of a question asked plaintiff as to whether the foreman or anyone having supervision over him told him what kind of shoes he should wear was erroneous.

**Appeal and Error—Harmless Error—Cure by Instructions to Disregard.**

2. The admission of such question was not reversible error under Section 556, L. O. L., providing that judgments may be reversed only for errors substantially affecting the rights of appellant, where the court instructed the jury to disregard the evidence regarding the alleged custom or usage, if they found that it was testified to by only one witness.

**Master and Servant—Actions for Injuries—Instructions.**

3. Where the evidence showed that ignorant and inexperienced employees were directed by the foreman to go on a pile of wet and slippery lumber, piled loosely as dumped from a car, without warning them of the dangers incident to working on the pile, an instruction that an employee assumed the ordinary risks incident to the work contracted to be done, but not such as the employer might have avoided by reasonable care, was proper, since it is an employer's duty to furnish employees a reasonably safe place in which to work, and his failure to do so is not one of the risks or perils assumed by the employee.

[As to master's duty to furnish servant safe places and appliances, see note in 33 Am. St. Rep. 766. See, also, notes in 34 Am. Rep. 621; 54 Am. Rep. 726; 57 Am. Rep. 727.]

[As to doctrine as extended to costs when master sends servant to work on premises of third person, see note in Ann. Cas. 1913B, 796.]

Master and Servant—Actions for Injuries—Instructions.

4. Under such evidence, it was proper to charge that if an employer directed an employee to do certain work in a manner not reasonably safe, and the performance of the work in the manner directed was the proximate cause of an injury, the employer was guilty of actionable negligence.

Master and Servant—Liability for Injuries—Warning.

5. It was actionable negligence for a foreman to direct inexperienced and ignorant employees to go upon a pile of lumber from eight to ten feet high, which was wet and slippery and piled loosely as dumped from a car, without giving them any warning as to the dangers incident to working on the pile.

Master and Servant—Liability for Injuries—Warning.

6. It is the duty of an employer to warn an ignorant or incompetent employee of all risks or dangers incident to the employment of which the employer knows, or should know.

> [As to master's duty to warn servant of danger of the work, see note in 1 Am. St. Rep. 28 and 548.]

Master and Servant—Actions—Instructions—Contributory Negligence.

7. In an action for injuries to an inexperienced and ignorant employee, it is error to charge that it is the duty of an employee to exercise care in examining his surroundings and to acquire such knowledge of danger as "can" be obtained by observation, and that if he fails to do this the risk is his own, since it imposes upon the employee the duty of exercising more than reasonable care, which is all that is required even of an experienced workman.

Master and Servant—Actions—Instructions—Contributory Negligence.

8. In an action for injuries to an ignorant and inexperienced employee, an instruction that if plaintiff did not take care in examining his surroundings or in observing the manner in which his fellow-workmen did their work, and as to whether their acts might prove dangerous, and did not use reasonable care to examine his surroundings, he was guilty of negligence, was properly refused, as an ignorant and inexperienced employee is not required to use ordinary or reasonable care.

Master and Servant—Actions—Instructions—Contributory Negligence.

9. In an action for injuries to an inexperienced employee while working, as directed by the foreman, on a pile of wet and slippery lumber from eight to ten feet high, piled loosely as dumped from a car, an instruction that the work mentioned was of a simple nature, and that any ordinary laboring man, as a matter of law, ought to understand the ordinary hazards of such work, was properly refused.

> [As to forgetfulness of known danger as negligence of servant, see note in Ann. Cas. 1913B, 1197.]

Trial—Instructions—Cure by Other Instructions.

10. In an employee's action for injuries sustained while handling lumber, where a usage to furnish employees a particular kind of boots or shoes for use in such work was proved by only one witness, and the court instructed the jury to disregard that question unless at least

65 Or.—22

two witnesses to prove the usage had been produced, an instruction that the employer's failure to furnish the employee the proper kind of boots to wear was not negligence was properly refused, since that subject had been eliminated by the court's charge.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Statement by MR. JUSTICE RAMSEY.

This is an action by John Prement against H. W. Wells, and J. B. Laber, a partnership doing business under the firm name and style of Wells & Laber Lumber Company to recover the sum of $10,000 as damages alleged to have been sustained by him for personal injury which he claims to have suffered when working for the appellants at their mill on September 3, 1910. The appellants' mill is situate in the mountains not far from Rainier, Oregon. The respondent is a Greek, and he and another Greek, named Cookoolos, entered the employment of the appellants on the 27th day of August, 1910, and the respondent worked for the appellant six days, his employment ceasing on September 3, 1910, the day he was injured. The respondent was employed as a roustabout to work about the millyard as directed; he had had no previous experience in working about a millyard; he was about 24 years of age at the time he worked for the appellants; he had been in the United States only a few years; his previous work in this country had been as a laborer in railroad building and as an employee in hotels and restaurants. Prior to September 3d he had done various kinds of work for appellants about the mill and premises. On September 3d, under the directions of the appellants, the respondent and Cookoolos were engaged in removing and segregating a pile of lumber that was being run out from appellants' mill by cars and dumped in large quantities by the car track near the mill. This lumber had been recently

sawed from logs drawn from the water, and was heavy and wet and more or less slippery. It was sawed for making a road, and was from three to four inches thick, and the boards were of varying widths and lengths, some being 20 inches wide. The respondent alleges that this pile of lumber was in the shape of a cone, and from eight to ten feet high, and it was so piled that no two pieces of planks occupied the same position or angle; and that there were large holes or spaces between the different pieces, and it was very difficult and dangerous for any person on said pile of lumber to move about to or from the top thereof. The respondent alleges that he and Cookoolos were both inexperienced in handling timber and lumber, and that they were wholly dependent upon the different orders and instructions of the appellants as to the manner of doing their work. He alleges also that he and Cookoolos had no knowledge or information as to the danger or hazard to which they were subjected in handling and segregating the lumber in said pile. The respondent also alleges that the appellants failed and neglected to notify the respondent and Cookoolos of the dangerous character of the work which they were required to do in segregating and piling said lumber, and that, without giving them any instructions as to the manner of doing said work, the appellants directed them to remove and segregate said pile of lumber; that the respondent and Cookoolos began to remove and segregate said lumber, and in doing so stationed themselves on the ground surrounding said lumber pile; that while thus performing said work the appellants, by their agents and superintendent, approached them and reprimanded them for the method in which they were doing the work, and with curses and abuse commanded them forthwith to mount said pile of lumber and remove and segregate the same

from the top of said pile, without warning or informing them of the danger of doing said work in that manner from the top of said pile; that pursuant to said orders the respondent and Cookoolos immediately mounted said pile of lumber, which was in the shape of a cone, and from eight to ten feet high, and proceeded to remove said lumber as ordered; that while thus engaged in removing a piece of said lumber from the top of said pile, the respondent carrying one end and Cookoolos the other to the ground immediately surrounding said pile, the respondent and Cookoolos slipped and fell, causing said stick of lumber which they were carrying to strike the respondent, greatly injuring his reproductive organs. The respondent alleges that said acts of appellants in ordering him and Cookoolos to mount said pile and to segregate said lumber, as above stated, without warning them of the danger to which they were thereby subjected, was negligence, resulting in said injury to the respondent. The respondent also avers that the appellants, by ordering respondent and Cookoolos to mount said pile of lumber and to segregate said lumber from the top of said pile, required them to work in an unsafe and dangerous place, and that this constituted negligence, resulting in said injury.

The answer denies nearly all the allegations of the complaint, and then pleads that whatever damages the respondent sustained by said accident were due to the contributory negligence of the respondent; and the answer also alleges that the respondent knew and understood the risks and dangers of his employment, and that he assumed all the risks and dangers thereof.

No questions arise on the pleadings. A motion for nonsuit was denied by the court. The defendants appeal. AFFIRMED.

For appellants there was a brief over the names of *Messrs. Wilbur, Spencer & Dibble,* with an oral argument by *Mr. Schuyler C. Spencer* and *Mr. John F. Logan.*

For respondent there was a brief over the names of *Mr. G. G. Schmitt* and *Mr. L. E. Schmitt,* with an oral argument by *Mr. G. G. Schmitt.*

MR. JUSTICE RAMSEY delivered the opinion of the court.

1. The first assignment of error relates to the ruling of the court permitting the following question to be answered by the respondent: "Did anyone tell you there, the foreman or anyone who had the supervision there in the mill, as to what kind of shoes you should wear?" Counsel for the respondent attempted to show in the court below that there was a general usage among sawmill men to furnish men who handle lumber a certain sort of shoes to protect them against accidents, but he produced only one witness who testified to any such usage or custom. This question was probably asked as a link in the chain of evidence to show that the appellants were negligent in not furnishing such shoes, or in not informing the respondent that he should wear certain kinds of shoes when segregating the lumber, to protect him from slipping when standing or working on slippery lumber.

There is nothing in this case to show that the wearing of shoes with spikes in their soles would have been of any protection to the respondent. There was also an unsuccessful attempt on the part of the respondent to show that there was a general custom or usage prevailing among sawmill men to furnish their employees, who handled lumber that is wet and slippery, what are referred to in the complaint as loggers' or lumber-

men's shoes. However, only one witness testified to that effect, and several testified that there was no such custom or usage. Under Section 801, L. O. L., at least two witnesses are necessary to prove usage; and hence such a custom or usage was not proved.

2. Under the facts of this case, the court below should have held the question above set out to be irrelevant, but allowing it to be answered was, at most, a harmless error, as the answer to it could not have influenced the verdict. A judgment may be reversed on appeal only for errors substantially affecting the rights of the appellants: L. O. L., § 556; Hayne, New Trial and Appeal (Rev. ed.), § 286.

The court below instructed the jury that they should disregard the evidence in regard to the alleged custom or usage concerning the furnishing by millmen to their employees, or the using by employees of spiked or calked shoes or boots when handling lumber, if they found that said supposed custom or usage was testified to by only one witness. The jury knew that only one witness testified to such supposed custom or usage; and hence must have disregarded all evidence concerning that subject.

3, 4. The giving of the following instruction is assigned as error: "A servant in entering the employment of a master assumes the ordinary risks incident to the work contracted to be done, but not such as the master might have avoided by reasonable care. The law also provides that if a master directs his servant to do certain work in a manner not reasonably safe, and the performance of the work in the manner directed is the proximate cause of the injury to the servant, the master is guilty of actionable negligence."

The plaintiff was about twenty-four years of age when he was injured; he was a foreigner and had had no experience in working about mills or in handling

lumber. Mr. John Bryant, the foreman of the appellants at the mill when respondent worked there, testified as a witness for the appellants as to the respondent and Cookoolos, who worked with respondent, and swore that they were ignorant as to· their work, and that he had to "demonstrate it to them"; he said that if he would tell them to do anything they would not understand it and he would have to show them how to do it; he said that he would have to "demonstrate" it to them practically: See pages 295, 296, of the evidence. This corroborates the evidence of the appellant and Cookoolos that they were ignorant of the work in which they were engaged, and shows that the appellants' foreman was fully advised of their inexperience and ignorance before the accident occurred.

The evidence of the respondent and Cookoolos tended to show that the pile of lumber upon which they were working had been dumped on the ground from a car; that the pile was from eight to ten feet high; that it was piled loosely; that it was wet and slippery; and that they had first stood on the ground and segregated the lumber; that a short time before the accident complaint was made to them that they were not earning their wages; that the foreman, John Bryant, went to where they were working and called them "God damned sons-of-bitches," and ordered them to go on top of the pile of lumber and to work from the top of the pile; that they at once obeyed the orders, mounted the pile, and successfully carried two boards from the top of the pile; that they took hold of a third plank, respondent carrying one end and Cookoolos the other; that the respondent slipped and fell and Cookoolos fell also; and that by this fall the respondent was seriously injured. The lumber in this pile was more or less wet and slippery, and the planks were

from three to four inches thick, and some of them were 20 inches wide and heavy. Foreman Bryant denies ordering these men to get on top of the dump of lumber, and says that he does not remember whether or not he called them vile names, as they say he did. In his evidence he calls them "cattle."

The evidence shows that the lumber in this pile was more or less wet and slippery; that the logs from which it was sawed were drawn from the millpond and sawed; the lumber was then loaded into a car and run out and dumped on the ground in a large pile, in all kinds of shapes. The evidence shows that the respondent was without experience and ignorant of the dangers incident to the work in which he was engaged, and that the appellants' foreman, Mr. Bryant, knew this.

Neither the appellants nor their foreman instructed or warned him of the dangers incident to his standing or working on the top of the dump of lumber and segregating the lumber from that position. We believe from the evidence that the top of said dump of lumber was not a reasonably safe place for the respondent to work segregating said lumber, considering the manner in which the lumber was piled and that it was more or less slippery.

5. The respondent and his colaborer, Cookoolos, testified that they had been segregating the lumber from the pile while standing on the ground, and that the foreman ordered them with a curse to mount the pile and work from there, and that they immediately obeyed this order. If this evidence is true, we think that the appellants were guilty of negligence, which caused the injury, considering the unsafeness of the top of the pile of lumber as a place for the men to work, and their ignorance and inexperience, and the fact that they were not instructed as to the dangers incident to their work on the top of that pile of lumber.

The instruction set out, *supra,* states the general rule that a servant entering the employment of a master assumes the ordinary risks incident to it, and then states that he does not assume such risks as the master might have avoided by reasonable care. It states also that if the master directs his servant to do work in a manner not reasonably safe, and the performance of the work in the manner directed is the proximate cause of an injury to the servant, the master is guilty of actionable negligence. We deem this instruction correct under the facts of this case.

The place where the respondent was injured appears not to have been a reasonably safe place in which to work, and he was ignorant and incompetent and not warned by the appellants of the danger incident to his working there. Ordering him to work there under the circumstances was negligence, and the appellant did not assume the risk incident to the work, nor was he guilty of contributory negligence in working there under the circumstances.

It is elementary law that the master must furnish the servant a reasonably safe place in which to work, and that if he fails to do so he is guilty of negligence. This is a positive duty of the master, and it is not one of the risks or perils assumed by the servant by his contract of employment: See 20 Am. & Eng. Ency. of Law (2 ed.), pp. 55–57; *Johnson* v. *O. S. L. Ry. Co.,* 23 Or. 94 (31 Pac. 283) ; 26 Cyc. 1097–1101.

6. It is also the duty of the master to warn an ignorant or incompetent servant of all risks or dangers incident to his employment of which the master knows or should know: 26 Cyc. 1173, 1174; 20 Am. & Eng. Ency. of Law (2 ed.), 97.

Bailey, in his work on Personal Injuries, vol. 2 (2 ed.), page 954, says: ''On the other hand, if a servant, because of inexperience which is known to the

master is incapable of understanding and appreciating a danger and the master fails to properly instruct him, the servant does not assume the risk.'' The same book, on page 952, says: ''Ordinary risks are those incident to the business which are impliedly assumed by the contract of employment; and extraordinary risks, the risks of negligence of the master which are not assumed unless known to the servant, or they should have been known by him in the exercise of ordinary care. In other words, ordinary risks are always assumed, but extraordinary risks are not assumed unless known or obvious.''

The first part of this charge refers to ordinary risks which the servant assumes, and the latter part to extraordinary risks which the servant does not impliedly assume. It is the latter part of the charge to which the appellants object, which is as follows: ''The law also provides that if a master directs his servant to do certain work in a manner not reasonably safe, and the performance of the work in the manner directed is the proximate cause of injury to the servant, the master is guilty of actionable negligence.'' · This charge should be construed with reference to the facts of this case, and construing in that manner it is correct. The direction referred to in the charge had reference to the order of the appellants' foreman, Bryant, requiring the respondent to mount the dump of lumber and to work from the top of the pile, which was not a reasonably safe place to work; and the ignorance and inexperience of the respondent, and the fact that he was not warned of the danger incident to working in a dangerous place, are to be taken into account in construing it. When a master orders an ignorant and inexperienced servant to work in a place that is dangerous, without warning him of the dangers incident to working in such a place, and he obeys the orders and

is injured, the master is guilty of actionable negligence. There was no error in giving this charge.

7, 8. The third and fourth assignments of error are the refusal of the court to give the following charges: "It is the duty of a servant to exercise care in examining his surroundings and to acquire such knowledge of danger as *can* be obtained by observation, and if he fails to do this the risk is his own. If, therefore, you find that the plaintiff did not take care in examining his surroundings or in observing the manner in which his fellow-servants did their work, whether in a careful or careless manner, and as to whether their acts might prove dangerous or not, and did not use reasonable care to examine his surroundings, then you are to find that the plaintiff is guilty of negligence himself and assumed the risks of his employment, and you must find for the defendants." Neither of these charges is applicable to the facts of this case. A servant who is experienced in a business is required to exercise only reasonable care to avoid injury. The first requested charge requires more than ordinary care in a servant. It requires a servant to exercise care and to acquire such knowledge of danger as *can* be obtained by observation. This seems to require more than reasonable care. It ignores the fact that the appellant is an ignorant, inexperienced servant, and would require of him more diligence than the law requires of an experienced servant. Ordinary care is all that is required of any servant.

3 Bailey on Personal Injuries (2 ed.), 1339, states the rule thus:

"All cases agree that the care which a servant must exercise to preclude the defense of contributory negligence is ordinary care. Ordinary care is such as may be usually expected of persons of ordinary prudence under like circumstances, considering the perils of the

business.'' The same book, on page 1339, states the rule thus as to ignorant servants: ''The degree of care required of a servant of less than average intelligence is such as men of his capacity and understanding generally exercise under like circumstances, and not such as men of average intelligence exercise.''

The second requested instruction is subject to the same objections as the first, excepting that it requires only reasonable care, but it is not applicable because under the facts in this case the respondent, being an ignorant, inexperienced servant, was not required to use ordinary or reasonable care. These requested charges were properly refused.

9. The fifth assignment of error is based on the refusal of the court to give the following charge: ''I charge you that the work mentioned herein was of a simple nature, such as handling lumber, and any ordinary laboring man ought, as a matter of law, to understand the ordinary hazards of this work.'' We think that the handling of lumber on top of the lumber dump, under the circumstances of this case, was something more than a simple case of piling lumber. The lumber was very heavy and more or less wet and slippery, and the work was more than ordinarily dangerous. The court properly refused this instruction.

10. The sixth assignment of error contains a request for a charge to the effect that the failure of the appellants to furnish the respondent the proper kind of boots to wear when handling lumber did not constitute negligence, and it was properly refused, because the respondent failed to produce two witnesses to prove a usage among millmen to furnish boots or shoes of any sort to be used by them to protect them from slipping. The court instructed the jury to disregard that question, unless the respondent had produced at least two witnesses to prove such supposed usage. Only one

witness swore that such a usage existed, and several witnesses testified that there was no such usage. That subject was eliminated by the charge of the court.

The last two questions for consideration arise on the refusal of the court to grant a nonsuit, and on the court's refusal to instruct the jury to return a verdict for the appellants. These points raise substantially the same question. We believe the rulings of the court to be correct. While the evidence was conflicting and the case for the respondent not strong, we believe that there was enough evidence to require the case to be submitted to the jury and to sustain the verdict returned by the jury. The instructions given to the jury were quite lengthy and covered every point in the case, and they were fair to the appellants.

We find no reversible error, and the judgment of the court below is affirmed.                    AFFIRMED.